## COCKRILL *v.* JOYCE.

### Opinion delivered March 28, 1896.

BANK—LIEN.—A bank has a lien on notes delivered to it for collection for the payment of the amount due it by the owner thereof, unless such lien is inconsistent with the actual or presumed intention of the parties.

ESTOPPEL—ELECTION TO TAKE UNDER ASSIGNMENT.—A bank holding notes of its debtor either as collateral security or under its implied lien for the balance due by the debtor will not be estopped to enforce its rights in such notes by electing to claim under an assignment of such debtor purporting to pass title to all notes of the debtor, nor by consenting to a sale by a receiver of all the notes of the debtor in his hands.

PLEADING—INCONSISTENCY.—A claim by a bank of a general lien on a debtor's securities for a balance due by the debtor is not inconsistent with its claim of a lien thereon by special contract.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

STATEMENT BY THE COURT.

This is a contest concerning the ownership of sixteen promissory notes which were executed to the McCarthy & Joyce Company by certain of its customers. The company was a corporation organized under the laws of this state, and engaged in business in the city of Little Rock. The notes in question were placed by it in the First National Bank of Little Rock, either for collection, or as collateral security for indebtedness due by the company to said bank. Afterwards the company made an assignment to C. H. Whittemore in trust for the benefit of its creditors. The property conveyed by the assignment was described as follows: "All its stock of goods, wares and merchandise now in its two store rooms and cellar, * * * together with all safes and office and store fixtures in said stores; also, all cotton belonging

to said company; and, also, all notes, accounts, and evidences of debt and choses in action of every kind, belonging to said company, and all of its real estate."

Afterwards the chancery court, upon the application of the First National Bank, which was a preferred creditor in the assignment, appointed said Whittemore receiver to take charge of the property conveyed by the assignment. Whittemore took charge of the property as receiver, and filed an inventory thereof, including in said inventory the notes in controversy. Subsequently, under order of the court, the receiver sought bids for the property, and received one from appellees, in words as follows, omitting immaterial portions:

"C. H. Whittemore, Esq.—Dear Sir: We hereby offer you for the stock of goods, real estate, notes, accounts, and other property of the McCarthy & Joyce Co., in your hands as receiver of the Pulaski chancery court, the sum of thirty-eight thousand and two hundred dollars.  *  *  *  James E. Joyce & Co." The bid was afterwards raised to forty thousand dollars, and was accepted, and the receiver ordered by the court to transfer and deliver to appellees "the personal property in his hands as such receiver, including notes, accounts, mortgages, choses in action, and property of all and every character of the estate of McCarthy & Joyce Company," etc. Excluding the notes in controversy, the property purchased by the appellees, J. E. Joyce & Company, and for which they agreed to pay $40,000, was valued in the inventory at $100,000, and was of the actual value of $70,000.

Under this purchase, the appellees, J. E. Joyce & Co., claimed the notes in controversy, and filed their petition in chancery, praying that appellant, as receiver of the bank, be required to turn over said notes to them. Appellant, as receiver, denied the claim of petitioners. He filed an answer to the petition, denying that the

notes in controversy were ever in the hands of Whittemore, receiver of McCarthy & Joyce Company, and denying that he was ever ordered to sell the same. He alleged that "said notes were placed with the First National Bank on the 12th day of January, 1893, by McCarthy & Joyce Company, as collateral security to secure the payment of the indebtedness due the bank from said company, and were in the hands of the bank when the company made its assignment." He further alleged that, "at the time the McCarthy & Joyce Co. made its assignment, it was indebted to the First National Bank in the sum of $101,647.46 on its notes, and for overdrafts, and that said bank had a lien upon said notes to secure the payment of said indebtedness, and that said indebtedness remains yet due and unpaid."

The chancellor found that the notes were deposited for collection, and not for collateral security, and that, the bank having been preferred in the assignment, and having elected to take under the assignment, and having consented that the sale to said J. E. Joyce & Co. might be confirmed, was estopped to claim said notes, as against the petitioners, J. E. Joyce & Co. The receiver of the bank was ordered to deliver the notes in controversy to the petitioners, and from this order an appeal was taken. The other facts sufficiently appear in the opinion.

*J. H. Harrod*, for appellant.

1. A decree in chancery should be reversed when it is clearly against the weight of evidence. 34 Ark. 221. The evidence shows that the notes were deposited as collateral, and thereby became the property of the bank until its debt was paid. But if they were deposited *for collection* only, the bank had a lien on them for the amount of the general balance due it. 104 U. S. 54; 1 Jones on Liens, 241; 5 Term Rep. 492; 129 Mass. 358; 114 Pa. 328; 55 Mich. 379.

2. No obligation rested on the bank under the law to elect between taking under the assignment and under the collateral deposit, and no such election was made. Bisph. Eq., secs. 25, 303; Pom. Eq. Jr. (2 Ed.), vol. 1, sec. 472; Story, Eq. Jur. (8 Ed.), vol. 2, sec. 1075; 1 Pom. Eq. Jur., sec. 473–474; 9 Law. An. Rep., p. 108.

3. The bank is not estopped. The notes were never in the hands of the receiver, but they were in the possession of the bank, which was notice to the interveners that the bank claimed them. 58 Fed. 461; 54 Ark. 499; 53 *id.* 196.

*E. W. Kimball* and *Rose, Hemingway & Rose,* for appellees.

1. Whether the notes were assigned as collateral, or for collection, was a matter of fact which the chancellor found against the appellant, and the weight of the evidence supports the finding.

2. The bank never had a lien on the notes because it was not so intended by the parties, when they were deposited. 1 Jones on Liens, sec. 255; 130 U. S. 354–390; 104 *id.* 54–71; 99 *id.* 143; 5 Dill. 232; 130 U. S. 394; 41 Fed. 239; 12 Cl. & Fin. 787–806.

3. But if the bank ever had the right to hold the notes, it lost it by accepting the assignment, which, by its terms, attempted to dispose of them. It was put upon its election to accept the benefits and share its burdens, or renounce the same. It could not enjoy the benefits, and at the same time escape the burdens. 2 Beach, Mod. Eq., sec. 1073–4; 2 L. R. Eq. Cas. 481–6; 2 Ch. App. Cas. L. R. 518, 586; Bigelow on Estoppel, 578, 535.

4. It is estopped by its conduct in actively procuring the sale and approving it. Morse on Banks, etc., 43; 51 N. H. 324–333; 2 Herman on Estoppel, 1059; Bigelow on Estoppel, pp. 570–1; 31 Ark. 449; 47 Ark. 229.

5. Even if the bank got the notes under such circumstances as would ordinarily create a lien for a general balance, it cannot assert the lien in this case. It claimed to hold them as collateral security, and made no claim of a general lien. It cannot thus shift its position, as an afterthought, to meet the exigencies of this case. 96 U. S. 258; Bigelow, Estoppel, p. 717; 30 Ark. 453; 47 *id.* 309; 32 *id.* 346; 130 U. S. 394.

RIDDICK, J., (after stating the facts.) The question in this case is whether the receiver of the bank has the right to hold the notes in controversy for the payment of the balance due it from the McCarthy & Joyce Company. There is conflict in the testimony as to whether the notes were delivered to the bank for collection, or to be held as collateral security.

Lien of bank on deposits.

The cashier of the bank testified that the notes were delivered as collateral to secure indebtedness of the McCarthy & Joyce Company to the bank. On the other hand, the bookkeeper and secretary of the company, who delivered the notes to the cashier of the bank, testified that they were delivered for collection. He said that the cashier of the bank called at their office, and asked "what notes they had," saying that the bank examiner would be there shortly, and he wanted to make a good showing to him; that witness thereupon delivered to the cashier the notes in controversy, the face value of which amounted to eleven thousand dollars. "I intended," he said, "for the bank to collect the notes, and place them to our credit." Under these circumstances, we conclude that the bank had a lien upon the notes for the payment of the amount due it by the company, without regard to the fact whether there was an express agreement for a lien or not. The law on this subject is well settled, and is thus stated by a recent writer: "A banker has a lien on all securities of his debtor in his hands for the general balance of his

account, unless such a lien is inconsistent with the actual or presumed intention of the parties. The lien attaches to notes and bills and other business paper which the customer has entrusted to the bank for collection, as well as to his general deposit account. * * * And so, if the securities be deposited after the credit was given, the banker has a lien for his general balance of account, unless there be an express contract, or circumstances that show an implied contract, inconsistent with such lien." 1 Jones, Liens, (2 Ed.), sec. 244. We see nothing in this case inconsistent with such a lien, or showing a different intention on the part of those concerned. The undisputed facts are that the company was owing the bank nearly a hundred thousand dollars. The cashier of the bank reminded the bookkeeper and secretary of the company of this fact, and asked for these notes that he might make a good showing to the bank examiner, who was expected shortly. In response to this request, the secretary delivered the notes; intending, so he says, that the bank should collect them, and place the proceeds to the credit of the company. He was an officer and stockholder in the company, and his authority to deliver the notes is not denied. Taking his statement as true, we think the bank had a lien upon the notes for the payment of the balance due from the company. *Kelly* v. *Phelan*, 5 Dill. 228; *Reynes* v. *Dumont*, 130 U. S. 392; *Bank of Metropolis* v. *New England Bank*, 1 How. 239; 1 Jones on Liens, secs. 241-244.

In addition to this, if these notes were placed in the bank by the company to make it appear to the bank examiner that the indebtedness on the part of the company to the bank was well secured, it furnishes another reason why the company should not now be allowed to withdraw the notes without discharging its debt.

It is further contended that the bank, having elected to claim under the assignment, and to share in the pro-  *As to estoppel by election.*

ceeds of the property assigned, is now estopped to assert title to the notes. There is no express reference to these notes in the assignment, though it, in general terms, conveyed "all notes, accounts, evidences of debt, and choses in action of every kind belonging to said company." This, of course, conveyed any interest that the company had in these particular notes which was the right to redeem them upon paying its debt to the bank. The notes were in the custody of the bank at the time of the assignment, and it in no way affected the right of the bank to hold such notes.

The title to the notes was in no way involved in the application of the bank for the appointment of a receiver to take charge of the assets conveyed by the assignment, for the assignment did not convey, or purport to convey, more than the right to redeem the notes. The receiver of the company knew that the bank held the notes, and was fully informed by the bank of its claim to the notes. The receiver was only authorized to sell the property in his hands, and the appellees recognized this, for they confined their bid to the property in the hands of the receiver. As the receiver was not offering to sell, or the appellees proposing to purchase, any property, except that in the possession of the receiver, the bank, by consenting to the confirmation of such sale, and sharing in the proceeds thereof, was not estopped from asserting its claim to property not in the possession of the receiver, or embraced in his sale. The bank at all times affirmed its right to hold these notes as a partial security against the amounts due it by the company, and, so far as we can see from the evidence, the appellees were in no way misled by the bank or its agents. Appellees made their bid for and received the property in the possession of the receiver. If they expected by this purchase to obtain title to notes held by the bank, and not within the control of the court or its receiver, it was a mistake of law

for which the bank was in no way responsible. Our conclusion is that the doctrine of estoppel does not apply in this case.

Neither do we think that the claim of a general lien by the bank is inconsistent with its claim of a lien by express agreement. It asserted the right to hold the notes as security for the payment of the debt of the company, and its answer was drawn so as to cover both a general lien and a lien by special contract.

<span style="float:right; font-style:italic;">Pleading not inconsistent.</span>

The judgment of the chancery court is therefore reversed, and the petition of appellees is dismissed.

Battle, J., being disqualified, did not sit in this case.