GARRISON *v.* UNION TRUST CO.

1. BANKS AND BANKING — COLLECTIONS — GENERAL BALANCE — LIEN.

A bank has a lien on the proceeds of a draft sent to it by a correspondent for collection for the general balance of its account with the correspondent unless it has notice that the draft is not the property of the correspondent.

2. SAME—LIEN—ASSERTION AGAINST OWNER.

A general indorsement on a draft sent for collection conveys an apparent title to the bank to which it is sent, and on that bank's sending it to another, which actually makes the collection, entitles the last-named bank to a lien on the proceeds for its general balance with the intermediate bank, though the first-named bank is in fact the owner.

3. SAME—NOTICE.

Where a draft bears a general indorsement apparently transferring title to a bank, the fact that the bank indorses a collection number upon it does not put a correspondent bank upon notice that it is held for collection merely.

4. SAME—DISOBEDIENCE OF INSTRUCTIONS.

Where a sight draft drawn against a car of grain in transit is accompanied by instructions to "return at once if not paid," and the bank to which it is sent, following an established custom, holds it until the car arrives, when it is paid in full, the bank does not, by so doing, forfeit its right to a lien on the proceeds for its general balance with the forwarding bank.

Appeal from Wayne; Donovan, J. Submitted January 17, 1905. (Docket No. 58.) Decided March 21, 1905.

Petition by William D. Garrison and Arthur Garrison, doing business under the name of Exchange Bank, against the Union Trust Company, receiver of the City Savings Bank of Detroit, for the return of a deposit made after the insolvency of defendant bank. The State Bank of

Carson City also filed a petition praying for the return of a draft sent for collection. The petitions were heard as one, and from the order entered the Garrisons appeal. Reversed.

*Angell, Boynton, McMillan & Bodman,* for petitioners Garrison.

*Thomas A. E. Weadock,* for petitioner Carson City Bank.

*Bowen, Douglas, Whiting & Murfin,* for defendant.

BLAIR, J. On January 30, 1902, the State Bank of Carson City sent to the City Savings Bank a sight draft drawn by the Rockafellow Grain Company, Limited, upon the Vernon Milling Company, at Vernon, Mich. The form of the draft was as follows:

"$467.50.          CARSON CITY, Mich., Jany 29, 1902.
"For car No. 20714, at sight, pay to the order of E. C. Cummings, Cash'r, four hundred sixty-seven and 50 / 100 Dollars.
"Value received, and charge the same to account of
            "THE ROCKAFELLOW GRAIN CO., LTD.
                    "Per F. A. ROCKAFELLOW, Mgr.
"To VERNON MILLING CO.
      "No. 123 Vernon, Mich.
      "Rockafellow Grain Co., Ltd."

On a perforated stub, the following:

"No protest. Take this off before presenting. If not paid, return without delay and state reasons given."

When this draft was received by the City Savings Bank, it bore the following indorsement:

"Pay City Savings Bank, Detroit, or order.
            "STATE SAVINGS BANK OF CARSON CITY,
"Carson City, Mich.          E. C. CUMMINGS, Cashier."

With the draft came a letter from the Carson City bank, of which the following only is important:

"Carson City, Mich., Jan. 30, 1902.
"City Savings Bank,
          "Detroit, Mich. .
    "*Gentlemen:* I enclose for credit,
          [here follow several items.]
    "For col., credit and advice,
"No. 123, Rockafellow Gr. Co. on Vernon Mill-
    ing Co. _____ $467 50
    "No Protest.
                    "Yours truly,
    [Signed]          "Ira Cummings, Ass't Cash."

The difference between the manner in which items were
treated when sent "for credit," and when sent "for col.
[collection] credit and advice," was as follows: Items
sent "for credit" were items drawn on other banks, and
were credited by the City Savings Bank as soon as received.
If they were not paid, the Carson City bank would be
charged back with the amount. Items sent for "collec-
tion, credit and advice" were forwarded to some bank where
the collection was to be made, and they were not passed to
the credit of the Carson City bank until the collection had
actually been made, at which time the Carson City bank
would be credited and advised thereof.

On receiving this draft, the City Savings Bank marked
upon its back: "Pay to the order of any State or National
bank. City Savings Bank, Detroit, Mich. H. R. Andrews,
Cashier"—and on its face, with a rubber stamp: "City
Savings Bank. Collection, No. 4627, Detroit, Mich."

The City Savings Bank then sent the draft to Wm. D.
& Arthur Garrison, at Vernon, with the following letter:

                    "City Savings Bank.
                         "Detroit, Mich., 1/31, 190
"W. D. & A. Garrison,              Esq., Cashier.
                    "Vernon.
"*Dear Sir:*
    "I enclose for collection, and Cr.

    Please
    Report by
    Number.   Kindly follow instructions below.

    4627 No Pro. _____$467 50
                    C. C. No. 2123.

Protest all items unless otherwise instructed.
Advise payment promptly and return at once if not paid.
When unpaid, give reason.

" Respectfully yours,
" H. R. ANDREWS,
" Cashier."

The draft was paid February 8th.   The reason why it
was held was because the car of grain against which the
paper was drawn had not arrived.   On the same day,
February 8th, the Garrisons credited on their books the
account of the City Savings Bank with the amount of the
collection, and sent to the City Savings Bank notice of
this credit as follows:

"VERNON, MICH., Feby. 8 / 02.
"We credit your acc't with No. 4627, $467.50.
"W. D. & A. GARRISON, C. S."

This notice was written upon the letter of the City Sav-
ings Bank of January 31st, which was returned to the
City Savings Bank; reaching Detroit at the opening of
the bank, Monday, February 10th, at which time the bank
had ceased to do business, and was in the hands of the
banking commissioner.   Under authority of the bank-
ing commissioner, the Garrisons were charged with the
amount of the collection, and " State Special Account "
was credited with the same amount for the account of the
State Bank of Carson City.   After this credit was made,
the Carson City bank was notified as follows:

" CITY SAVINGS BANK,
" DETROIT, Mich.
" Detroit, 2 / 10.
" Your favor of the ——— instant received with stated
enclosures.

| Your No. or date | We credit | For collection." |
|---|---|---|
| 123 | $467 50 | |

On February 8th, at the close of business, the account
of the Garrison bank with the City Savings Bank showed
a credit balance of $1,378.13.   This includes a deposit of
$707.05 made on that day.   The Garrisons had for a num-

ber of years carried a balance at the City Savings Bank, and for 12 or 15 years had been making collections for the City Savings Bank in the same manner as done in this case; crediting the proceeds of such collections to the City Savings Bank against such balance on a running account existing between them.    The Garrisons had no knowledge of the relation which the City Savings Bank bore to the draft in question, except so far as was disclosed by the indorsement on the back thereof, by the rubber stamp on the face thereof, and the letter of instructions sent to them by said bank, and did not know, if such was the fact, that the paper was the property of the Carson City bank, and had only been turned over to the bank for collection.

The City Savings Bank was the correspondent of the Carson City bank, and they had been doing business with each other for some time.    There was a running account between the two banks, and there were no remittances of cash, but the course of their dealings was entirely a matter of debit and credit.    This was also the case with the bank of the Garrisons.

On the 12th day of February, 1902, the Union Trust Company was appointed by the court receiver of the City Savings Bank, and on March 4th following an order was made directing said receiver to return to depositors all deposits made on the 8th day of February, 1902.    Upon demand being made by the Garrisons for the repayment of their deposit of $707.05, the receiver refused to comply therewith, except after deducting the amount of the collection of $467.50.    Thereupon the Garrisons filed their petition, praying for an order directing the receiver to refund the amount of their said deposit.    The Carson City bank also filed a petition, alleging that the City Savings Bank received the proceeds of its draft above set forth on February 10, 1902, while insolvent, and praying for an order directing the payment to it of the sum of $467.50, with interest.    The respondent, the Union Trust Company, receiver, answered the petitions, seeking the in-

struction of the court, and asking that the petitions be consolidated and heard as one, and they were so heard. After hearing the proofs the court entered an order directing the payment of $467.50 to the Carson City bank, and the payment to the Garrisons of $239.55, being the amount of their deposit of $707.05, less the amount of said collection of $467.50.    From this order the Garrisons' appeal.

After the order on these petitions had been entered, notice of appeal given, bond on appeal filed, and the proposed case on appeal prepared and served and presented for signature, counsel for the Carson City bank sought to have the order set aside, and to introduce proof of the insolvency of the City Savings Bank for a period of six months prior to the 8th day of February, 1902.    This application was denied.

Counsel for the Garrison bank contend that, under the circumstances of this case, that bank had a lien upon the proceeds of the draft of $467.50 to secure the payment of its balance against the City Savings Bank; that the Carson City bank was merely a general creditor of the City Savings Bank as to the proceeds of the draft, and, as such, not entitled to a specific return of the amount collected; and that in any event the acceptance of the Garrison bank's deposit on February 8th of $707.05 was a fraud, from which no rights could accrue to the City Savings Bank.

The briefs filed on the part of the Carson City bank and of the Union Trust Company, receiver of the City Savings Bank, take the position, *first*, that the words appearing upon the face of the draft, viz., "City Savings Bank.    Collection No. 4627, Detroit, Mich.," were notice to the Garrison bank that the City Savings Bank was acting as agent for collection, and not as owner of the draft; *second*, that the Garrison bank disobeyed the positive instructions that, if the draft was not paid promptly, it should be returned at once to the City Savings Bank.

In *Gibbons* v. *Hecox*, 105 Mich. 509, 513, Mr. Justice LONG, speaking for the court, said:

"The general rule derived from the cases is that the bank has a lien on all moneys, notes, and funds of a customer in its possession, for any indebtedness of the customer to the bank which is due and unpaid. The reason given for allowing the lien is that any credit which a bank gives by discounting notes or allowing an overdraft to be made is given on the faith that money or securities sufficient to pay the debt will come into the possession of the bank in the due course of future transactions. In *Re Farnsworth*, 5 Biss. (U. S.) 223, Judge Blodgett, of the United States circuit court of Illinois, held that a bank holding a customer's demand note has a lien upon the proceeds of drafts delivered to it for collection after the giving of the note, though collected after the filing of petition in bankruptcy, and can apply such proceeds upon the note. In *Muench* v. *Valley Nat. Bank*, 11 Mo. App. 144, the court say:

"'The general lien of bankers is part of the law merchant. That bankers have a lien on all money and funds of a depositor in their possession for the balance of the general account is undisputed. A banker's lien does not arise on securities deposited with him for a special purpose; otherwise we have no doubt that when a discount has been made by the bank, and the note has matured, so as to create an indebtedness from the depositor to the bank, all funds of the depositor which the bank has at the date of the maturity of the discounted note, or which it afterward acquires in the course of business with him, may be applied to the discharge of his indebtedness to the bank; and this is true not only of the general deposit of the customer, but the rule applies to any commercial paper belonging to the depositor in his own right, and placed by him with the bank for collection.'"

See, also, 1 Morse on Banks and Banking (4th Ed.), §§ 324, 338; *Cockrill* v. *Joyce*, 62 Ark. 216. In the case last cited the paper was deposited for collection and credit. The court say:

"The law on this subject is well settled, and is thus stated by a recent writer:

"'A banker has a lien on all securities of his debtor in his hands for the general balance of his account, unless such a lien is inconsistent with the actual or presumed intention of the parties. The lien attaches to notes and bills and other business paper which the customer has intrusted to the bank for collection, as well as to his general deposit account, * * * And so, if the securities be de-

posited after the credit was given, the banker has a lien for his general balance of account, unless there be an express contract or circumstances that show an implied contract inconsistent with such lien.' 1 Jones, Liens (2d Ed.), § 244."

We find no circumstances here to take the case out of the general rule, but, on the contrary, the circumstances clearly entitled the Garrison bank to a lien upon the proceeds of the draft, as against the City Savings Bank, unless it had notice that the latter bank was merely an agent for collection or had disobeyed its instructions, as contended by the receiver, which we shall discuss later on.

The important question, however, remains—whether the Garrison bank was entitled to a lien on the proceeds of the draft as against the Carson City bank, the owner of the draft. We think that, under the circumstances disclosed by this record, it was. The State Bank of Carson City indorsed the draft over generally—"Pay City Savings Bank, Detroit, or order"—which constituted prima facie evidence of ownership of the draft by the City Savings Bank. The instructions sent by the latter bank to the Garrison, that the draft was inclosed "for collection and credit" did not, in view of the unbroken course of dealing between the banks, impugn their apparent title. *Cody* v. *City Nat. Bank*, 55 Mich. 379.

Although the proceeds of the draft were not to be credited to the Carson City bank until collected, it never was contemplated that the money, when collected, should be remitted to the Carson City bank. The instructions were explicit that, when collected, the proceeds should be credited to the transmitting bank. The Carson City bank had no thought of the proceeds of the collection forming a special fund to be held for it, but intended to rely in this instance, as it had in all its past transactions, upon the credit of the City Savings Bank, and its financial responsibility. As testified by Mr. Fuehrer, who was with the City Savings Bank at the time of the transactions in question:

"The State Bank of Carson City and the City Savings

Bank had been doing business for some time. The City
Savings Bank was the correspondent of the Carson City
bank. The manner in which this draft came to the City
Savings Bank was not unusual in any way. It came in
the customary way. * * * There was a running ac-
count, as it were, between the State Bank of Carson City
and the City Savings Bank. That is true, also, as be-
tween the City Savings Bank and the bank of W. D. & A.
Garrison, at Vernon. There were debits and credits on
the books of each of them—I mean the City Savings Bank
books and the Carson City bank books.

" *Q*. I suppose there would also be actual remittances
of cash or was it all a matter of debit and credit ?

"*A*. All a matter of debit and credit. That was true,
also, as between the City Savings Bank and the Garrison
bank."

Under such circumstances, if the collection had been
credited and reported to the City Savings Bank by the
Garrison bank, and to the Carson City bank by the City
Savings Bank, while solvent, the right of the Garrison
bank to retain the proceeds of the collection would be un-
questionable, under the arrangement between the respec-
tive banks. Must the Garrison bank lose its lien because
the City Savings Bank had closed its doors when notice
of the collection reached it ?

Although the rule is well established that, when a bank
acts as agent for the collection of paper, the property does
not pass from the depositor, it is equally well settled that,
when the money has been collected and credited, the title
passes. *Wallace* v. *Stone*, 107 Mich. 190.

In *Commercial Bank* v. *Armstrong*, 148 U. S. 50,
Mr. Justice Brewer, speaking for the court, said:

"We also agree with the circuit court in its conclu-
sions as to those moneys collected by subagents to whom
the Fidelity was indebted, and which collections had been
credited by the subagents upon the debts of the Fidelity to
them, before its insolvency was disclosed, for there the
moneys had practically passed into the hands of the Fidel-
ity—the collection had been fully completed. It was not
a mere matter of bookkeeping between the Fidelity and its
agents. It was the same as though the money had act-

ually reached the vaults of the Fidelity. It was a completed transaction between it and its subagents, and nothing was left but the settlement between the Fidelity and the principal—the plaintiff. The conclusions of the circuit court were based upon the idea that these collections could not be traced, because they had passed into the general fund of the bank. We think, however, a more satisfactory reason is found in the fact that, by the terms of the arrangement between the plaintiff and the Fidelity, the relation of debtor and creditor was created when the collections were fully made."

Under this high authority, the Garrison bank, having collected the draft without knowledge of the insolvency of the City Savings Bank, and having given that bank credit for the amount thereof, stood in precisely the same position as though it had actually transmitted the money to the bank.

Mr. Morse, in his work upon Banks & Banking (4th Ed.), §§ 591, 592, discussing the question "when a correspondent bank can hold paper sent to it for collection, or the proceeds of it, against the real owner," says:

"SEC. 591. When the last bank has successfully effected the collection, it is directly liable to the owner to pay the amount over to him only until such time as it has actually remitted the amount to its predecessor. But some nice questions have arisen where such predecessor, intervening between the real owner of the paper and the bank actually receiving the money, becomes insolvent before the receiving bank has actually paid over the amount to this predecessor. The general rule of law is that, if a person employs an agent to collect money under such circumstances that the agent naturally employs a subagent to accomplish the actual collection, then the principal will be entitled to sue the subagent, and collect the money directly from him, without regard to the relationship or condition of accounts existing between such agent and subagent, and although the subagent had no knowledge that his employer was an agent, and not a principal. But if the owner has delivered the paper to the agent, with no indicia whatsoever to show that such agent is not the owner, and the subagent receives it from the agent, supposing him to be the owner, and gives him credit upon the strength

139 Mich.—26.

thereof, then the principal cannot recover from the sub-agent.   *   *   *

"Sec. 592. The leading case illustrative of this principle is that of *The Bank of the Metropolis* v. *New England Bank* (1 How. [U. S.] 234, 6 How. [U. S.] 212). The latter gave to the Bank of the Commonwealth for collection a piece of negotiable paper indorsed generally, so that, for all that appeared upon it, the Bank of the Commonwealth might be the sole and real owner. The Bank of the Commonwealth forwarded it to its correspondent, the Bank of the Metropolis, with which it had a running account. That bank collected it, and gave the Bank of the Commonwealth credit for it upon the running account. The Bank of the Commonwealth failed, being indebted to the Bank of the Metropolis, and soon afterward the Bank of the Metropolis was notified of the true ownership of this piece of paper. The latter refused, however, to account to the New England Bank, which accordingly brought suit. The case is first reported in 1 How. (U. S.) 234; but at a second trial at nisi prius in the lower court the rulings of the Supreme Court appeared to have been so misunderstood that the court reiterated them with much clearness and succinctness, in the following shape:

"1. If, upon the whole evidence before them, the jury should find that the Bank of the Metropolis, at the time of the mutual dealings between them, had notice that the Commonwealth Bank had no interest in the bills and notes in question, and that it transmitted them for collection, merely, as an agent, then the Bank of the Metropolis was not entitled to retain the money, as against the New England Bank, for the general balance of the account with the Commonwealth Bank.

"2. And if the Bank of the Metropolis had not notice that the Commonwealth Bank was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the Bank of the Metropolis is not entitled to retain against the real owners, unless credit was given to the Commonwealth Bank, or balances suffered to remain in its hands to be met by the negotiable paper transmitted, or expected to be transmitted, in the usual course of the dealings between the two banks.

"3. But if the jury find that, in the dealings mentioned in the testimony, the Bank of the Metropolis regarded and treated the Commonwealth Bank as the owner of the negotiable paper which it transmitted for collection, and had

no notice to the contrary, and, upon the credit of such remittances made or anticipated in the usual course of dealing between them, balances were from time to time suffered to remain in the hands of the Commonwealth Bank, to be met by the proceeds of such negotiable paper, then the plaintiff in error (the Bank of the Metropolis) is entitled to retain against the defendant in error (the New England Bank) for the balance of account due from the Commonwealth Bank.

"Chief Justice Taney, in the first opinion in *Bank of the Metropolis* v. *New England Bank*, expressly denied that the former was put upon its inquiry as to the true ownership of the paper; the indorsement by the true owner being general, and not 'for collection.' The cited cases also establish that the collecting bank, the subagent, may retain the money, if, without making an actual payment, it has merely given credit to the agent, or suffered balances to its own credit to remain undrawn with the agent upon the strength of these receipts. But unless it has made some payment, or suffered a balance to remain undrawn, or otherwise substantially relied on the agent's ownership, so that it would be unjustly prejudiced by the denial of that ownership, then it cannot retain the money. The true owner, by indorsing, 'For collection,' could save all question; but if he chooses to neglect this precaution, to indorse generally, and thereby to permit his agent to appear as the owner, then, if a subagent or any other person be misled, and a loss occurs, it is proper that the owner whose carelessness has given opportunity for the subagent to be deceived should, as between these two, bear the loss.

"Where a negotiable instrument indorsed and delivered in blank to a bank, though in fact only for collection, is sent by it to another bank 'for collection and credit' before maturity, and the latter receives it without notice that it does not belong to the former, it may lawfully retain the proceeds of the collection to satisfy a claim for a general balance against the other bank, if that balance has been allowed to arise and remain on the faith of receiving payments from such collections pursuant to a usage between the two banks."

The doctrine of *Bank of the Metropolis* v. *New England Bank* has been adopted and applied in *Vickrey* v. *State Savings Ass'n*, 21 Fed. 773; *Wood* v. *Boylston*

*Nat. Bank*, 129 Mass. 358; *Wyman* v. *Colorado Nat. Bank*, 5 Colo. 30; *Rathbone* v. *Sanders*, 9 Ind. 217; *Millikin* v. *Shapleigh*, 36 Mo. 596; *Carroll* v. *Bank*, 30 W. Va. 518. It has been repudiated in New York and some other States. We incline to the view of Mr. Morse (4th Ed., § 600) that the doctrine of the Supreme Court of the United States is the better one, both upon reason and authority.

Did the words, "City Savings Bank. Collection, No. 4627, Detroit, Mich.," stamped upon the face of the draft, notify the Garrison bank that the City Savings Bank was not the owner of the draft, but a mere agent for collection? This draft was sent to the Garrison bank for " collection and credit," in accordance with the uniform practice of 12 or 15 years. The instruction to credit the proceeds of the draft to the City Savings Bank was inconsistent with the idea that that bank was a mere agent for collection, and was in harmony with the indorsement showing ownership. In the absence of any evidence in the record to invalidate the assumption, we think the Garrison bank might reasonably assume that the words were stamped upon the draft as a part of the bank's system of keeping track of its own collection items by number. We do not think these words, under the evidence in the case, tended to show that the City Savings Bank was acting as an agent for collection. As said by Mr. Justice CAMPBELL in *Cody* v. *City Nat. Bank*, 55 Mich. 379:

" When the paper came into the defendant's hands, it had an unqualified blank indorsement of plaintiff's, which presumptively transferred title to any one who might become the holder. The fact that Rice and Messmore indorsed it for collection had no tendency to show that they held it themselves merely as agents for plaintiffs," etc.

Should the amount of the draft be deducted from the deposit of $707.05 because the Garrison bank disobeyed instructions? This certainly presents a very unusual question. Ordinarily failure to follow instructions is complained of because such failure results in the partial or

total loss of the collection.   But in this case the failure to follow instructions, if there was such failure, resulted in securing the entire collection of the draft.   The draft in this case was drawn against a car of grain to arrive.   It was presented at once, and the drawee did not refuse payment or acceptance, but stated that he was willing to pay it as soon as the car of grain arrived.   He was a customer of, and had money on deposit with, the Garrison bank, and actually did pay the draft when the car arrived.   As shown by the record:

"*Q.* Now, have you frequently had paper of this kind, drawn by the same party and on the same parties, frequently come to your bank for collection, drawn on the City Savings Bank ?

"*A.* Yes, sir.

"*Q.* Was it customary for instructions of the kind that appear upon the stub attached to this draft to be upon ordinary paper that came from them—'If not paid, return without delay and state reasons given ? '

"*A.* Yes, sir; they always put that upon the draft.

"*Q.* Now, what was your practice in collecting paper of this kind drawn by the same parties in the way I have described—getting there before the goods arrived ?

"*A.* Held the draft until the goods arrived."

The natural construction of the language used was that the draft should be returned at once if payment was refused or if not paid promptly.   The parties, by their course of dealing, had placed a practical construction upon the meaning of the adverb "promptly," which justified the course taken by the Garrison bank in this instance.

It results that, in our opinion, the Garrison bank was entitled to credit the amount of their collection upon their balance with the City Savings Bank, and to have repaid to them the amount of their deposit of $707.05.

A decree will be entered in conformity with this opinion.

MCALVAY, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.