**CITIZENS' BANK & TRUST CO. et al. v. YANTIS. (No. 7609.)**

(Court of Civil Appeals of Texas. San Antonio. Oct. 13, 1926.)

**1. Banks and banking ⬳154(9).**

In action by assignee of note for conversion thereof by bank, evidence *held* insufficient to go to jury on question whether bank improperly applied proceeds of note on indebtedness of payees, plaintiffs' assignors.

**2. Banks and banking ⬳136.**

As respects bank's lien, where note or other security is placed in bank by customer for collection or general account, bank by implication has right to apply proceeds of such note on past-due indebtedness of depositor, particularly if he is insolvent.

**3. Banks and banking ⬳136.**

If debtor of bank be insolvent, bank has lien on securities deposited by him for collection or general account, whether it is debt past due or not.

**4. Banks and banking ⬳136.**

Bank's lien on note or other securities deposited by customer owing bank is superior to rights of assignee of such note or security, whose assignment was not made until after maturity of depositor's obligation.

**5. Bills and notes ⬳315.**

Assignee of note, with full notice of another's claim to proceeds thereof, stands in shoes of his assignor.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by R. M. Yantis against the Citizens' Bank & Trust Company and others. From order granting plaintiff's motion for a new trial after judgment on directed verdict for defendants, defendants appeal. Order granting new trial reversed, and judgment rendered.

Cunningham & Moursund and W. J. Bergstrom, all of San Antonio, for appellants.

John F. Onion and Leonard Brown, both of San Antonio, for appellee.

COBBS, J. Appellee says the statement of the suit as made by appellants is adopted; hence we include it in our opinion for the statement of the case:

"This is an appeal from an order granting a motion for a new trial. The suit was brought by R. M. Yantis against Citizens' Bank & Trust Company and the Commercial National Bank of San Antonio, as its successor, to recover the value of a note for $1,600 executed by Ben Cooper and others, payable to Jesse and J. C. Yantis, which note plaintiff alleged had been converted by Citizens' Bank & Trust Company.

"Plaintiff alleged: 'That on or about the 1st day of February, A. D. 1914, said note was placed by said J. C. and Jesse Yantis with defendant Citizens' Bank & Trust Company for the purpose of safe-keeping, the defendant agreeing to either buy said note or find a purchaser for the same; that, after receiving said note under the circumstances above set out, said defendant unlawfully appropriated and converted the same to its own use and benefit, claiming the same, and collecting the monthly installments paid by Ben Cooper, and appropriating and converting the money so paid to their own use and benefit.'

"Plaintiff alleged further that one year thereafter J. C. Yantis and Jesse Yantis assigned said note to plaintiff, and also transferred unto plaintiff any claim which they might have had for the alleged conversion.

"The defendants answered by general demurrer and general denial, and further alleged that for a long time prior to January 7, 1914, Jesse Yantis and J. C. Yantis had been doing all, or a large part, of their banking business with Citizens' Bank & Trust Company, keeping deposits with said bank, and borrowing money from it frequently, in both large and small amounts; that on or about said date said Cooper note had been delivered to said bank, and pledged to secure the payment of an $8,700 note by Jesse Yantis and J. C. Yantis; that installments aggregating $250 had been collected on said Cooper note prior to June 5, 1914, and duly credited on said $8,700 note, and that several new notes had been given, in each instance for the balance due on the indebtedness represented by the $8,700 note, after crediting the installments so received on the Cooper note; that on June 5, 1914, there remained due $8,450, for which Jesse and J. C. Yantis executed a new note due July 5, 1914; that default was made in the payment of said note, and a judgment rendered thereon June 29, 1915, for $9,628.01, being balance due after allowing credits aggregating $500, credited thereon as received in installments on the Cooper note; that the proceeds from collateral secured by real estate and foreclosed on in the same suit amounted to $2,239.40; that the Cooper note was paid in full; the installments being collected as they accrued up to July 5, 1916, and on July 12, 1916, the remaining principal and interest being paid thereon; that said judgment is entitled to the additional credits represented by payments on the Cooper note, leaving a large balance unpaid.

"Defendants further alleged that neither Jesse nor J. C. Yantis ever demanded of the bank the return of the Cooper note; that, on the contrary, they each acquiesced in, approved, confirmed, and ratified the holding thereof by Citizens' Bank & Trust Company as collateral security for its said indebtedness, and acquiesced in, approved, confirmed, and ratified said bank and trust company's collecting said note, and its right to do so, and its right to apply, and its application of, the proceeds of such collections to the satisfaction of its claim against them; that no contention was made by either of them for more than a year to the effect that said Citizens' Bank & Trust Company was not entitled to apply the proceeds of said note to the payment of its claim; that, if they undertook to assign the same to plaintiff as alleged by him, such assignment was made for the purpose, and with the intent, of defrauding their creditors, they being at that time, and in fact at all times, after the maturity of said $8,700 note, insolvent; that the purported sale or assignment of said note made to plaintiff, if any, was taken by the plaintiff with full knowledge and notice of the facts herein alleged, and of the said fraudulent intent on the part of said J. C. Yantis and Jesse Yantis, and no value was paid therefor, and such alleged transfer, if made, was made for the purpose of attempting to fraudulently deprive Citizens' Bank & Trust Company of said note and its proceeds; that any such pretended assignment was void by reason of the facts herein stated, and the said Citizens' Bank & Trust Company, by reason of the facts herein stated, had the right to apply the proceeds of the said note and the said note itself, at its face value, to the satisfaction of its said indebtedness evidenced by said note and said judgment, and such application was duly made, and defendants are now entitled to have the same adjudged to be a satisfaction to that extent of the debt evidenced by said note and judgment.

"At the conclusion of all the evidence, the court instructed the jury to return a verdict for the defendants.

"A verdict in accordance with the court's instructions was returned and judgment rendered thereon in favor of defendants.

"The plaintiff's amended motion for a new trial was heard on the 4th day of December, 1925, and was granted and a new trial ordered, to which action of the court the defendants then and there in open court duly excepted, and gave notice of appeal to this court."

The case of Tarbutton v. Ambriz, reported in (Tex. Civ. App.) 282 S. W. 891, opinion by Justice Smith, in which a writ of error was refused, was the first appeal under the new law authorizing either party to appeal from the ruling of the trial court in setting aside

the judgment or the verdict of the jury and granting the motion for a new trial.

[1] We concur in the statement made by appellee:

"The trial court granted plaintiff's motion for a new trial, holding that the evidence presented an issue of fact to be passed upon by the jury, and that he had erred in peremptorily instructing the jury. The question for this court to determine is whether the trial court erred in giving such peremptory instruction. If the evidence showed that as a matter of law the plaintiff was not entitled to recover, the trial court did not err in so instructing the jury, and if the evidence, under the pleadings, raised any issue of fact material to the determination of the case, the trial court did err, and correctly granted a new trial."

In order to give to appellee the very fullest benefit of his claim that there was an issue of fact that should have passed to the jury, we copy from his brief as follows:

"On cross-examination J. C. Yantis was asked in great detail as to his transactions with the bank, as to the number of notes he had signed and money borrowed. He testified that he would not say positively just when the Cooper note was left with the bank, but that it was a few days after its execution, and that when he took it to the bank he told Mr. Rosenfield it was left there for sale or collection. That was his recollection. That at the time he was a depositor, and that he and his brother Jesse were on various notes. He then testified that on January 7, 1914, he and his brother, Jesse, signed a note for $8,700, which note was secured by two collateral notes for $6,000 and $12,000, executed by John Morrow to Jesse Yantis, secured by a vendor's lien on real estate. That he did not remember whether this note was made payable 30 days after date, and did not remember executing various renewal notes. That the notes were signed either at his house when his brother would bring them to him or at the bank. That he did not know whether the note was being reduced $50 per month. That he signed the $8,700 note purely as an accommodation to his brother, Jesse Yantis. That during the year 1914 he and Jesse owed more money than they could probably pay, Jesse probably did. That he paid all of his personal debts. That he never did inquire of the bank what became of the installments. That he thought his brother, Jesse, would receive the first installments until his $695 was paid, and that would take about 14 months, and that he would then receive the installments each month. That he transferred his interest in the note and his claim about February 1, 1915, to his brother, R. M. Yantis, in consideration of some cattle. That he expected when the payments were collected on the Cooper note that he expected that the bank would credit either him or his brother on their deposit books. He then testified that a note given to the bank in December, 1914, was his own personal note, and secured by a lien on some cattle.

"He then testified as follows:

"'In my supplemental pleading in this case, I say that this note was placed in the bank to be cashed or collected by them, that is the purpose for which I left it there, to be cashed or collected by them. As to what was to be done with the proceeds in case they cashed it, my interest in the note was to be credited to my account, as a depositor. Jesse's interest was to be credited to his account also as a depositor.'

"Josef Rosenfield testified on cross-examination that it was true that only a year before the $8,700 note was executed we had loaned money to Jesse and J. C. Yantis, and had not required any other security from them other than the signatures of the brothers to the notes. That they had no record showing that any demand had been made for any additional security from them before the Morrow notes were brought up. That he could not answer whether any demand had ever been made upon J. C. Yantis and Jesse Yantis to put the $1,600 note up as collateral, and that Jesse and J. C. Yantis must have come in voluntarily and told them about the matter."

This is placing the matter before this court in the strongest possible phase upon appellee's own contention, and stronger perhaps than the facts justify, though we do not believe that there is any controverted material issue of fact shown.

[2] We think it is clear from the authorities that, when a note or other security is placed in a bank by its customer for collection or for general account, in respect to mutual dealings as such, the bank has a lien upon a note or its proceeds to secure the payment of past-due indebtedness. Likewise, after maturity of its indebtedness, it is authorized to apply any proceeds when collected to the payment of its indebtedness, and this would be true under the facts connected with the proceeds that were applied before the last renewal note of $8,450. The bank was entitled to keep the note and apply it to the note due the bank. It had the right to apply all payments and installments of payment received by the bank on the indebtedness due it, which was done from time to time. The right to collect any note left in the hands of a bank by the debtor depositor is given the bank especially in cases where the debtor depositor is insolvent. 7 Corpus Juris, p. 218, § 285; 3 Ruling Case Law, p. 585, § 215; 2 Michie on Banks and Banking, p. 1389, § 159; Morse on Banks and Banking, § 325; Studebaker Bros. Mfg. Co. v. First Nat. Bank (Tex. Civ. App.) 42 S. W. 573; First National Bank v. De Morse (Tex. Civ. App.) 26 S. W. 419; Bank of Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 115; Joyce v. Auten, 179 U. S. 591, 21 S. Ct. 227, 45 L. Ed. 332; Cockrill v. Joyce, 62 Ark. 216, 35 S. W. 221; Gibbons v. Hecox, 105 Mich. 509, 63 N. W. 519, 55 Am. St. Rep. 463; Garrison v. Union Trust Co., 139 Mich. 392, 102 N. W. 978, 70 L. R. A. 615, 111 Am. St. Rep. 407, 5 Ann. Cas. 813.

[3, 4] This doctrine is not dependent solely upon any express agreement, but arises by implication growing out of the relationship of the depositor and the bank. It is a wholesome rule, and presupposes that for such ac-

commodations extended by the bank the bankable paper delivered to it will stand charged with a lien upon the proceeds. So that, if the indebtedness to a bank be past due, the law merchant gives the lien on notes or the proceeds thereof, which are left in its hands for collection or otherwise. And, if the debtor be insolvent, that lien exists whether the debt be past due or not. As seen from the authorities cited, supra, this right is superior to the rights of an assignee of the obligation left for collection, whose assignment is not made until after the maturity of an obligation owned by the bank. There can be no difference in principle between an advance of money upon the faith of mutual dealings between the bank and its customer from the fact that a balance is permitted to remain over. Credit is given upon the faith of the mutual dealings and upon the contemplation of paper deposited or expected to be delivered in the usual course of the transactions between the parties. So, if the balances are allowed to stand uncollected, and the debt allowed to be constantly renewed and extended, by express agreement, the law will apply the same rule to the rights of the parties as though there had been an express agreement, and such mutual indulgences on such balances would create a valid consideration, and give the bank the right to retain and apply the balance due on closing the account.

Since the lien is given upon the theory that any credit the bank extends to its customer by way of loan or overdraft is given on the faith that money or securities sufficient to meet the debt at its maturity will come into the possession of the bank to discharge the same, of course, in such a case no express agreement is necessary. If there be an express agreement, then such securities would stand as collateral, but, in the absence of an express agreement, as seen, the relationship and mutual dealings do necessarily raise the implication of an agreement that the customer intends for his indebtedness to be liquidated with the fund deposited, and the commercial paper deposited is to be collected and credited to his general account.

We know of no contrary holding by our Supreme Court to the effect that credit must be extended at time of deposit of paper, and not otherwise, and, even though that be the law, which we deny, then as a matter of fact the extensions were granted after the Cooper note was received, and while the proceeds were being collected and applied.

[5] It is undisputed that R. M. Yantis took the note with full notice of the bank's claim and stood in the shoes of his assignor. Studebaker Bros. Mfg. Co. v. First National Bank (Tex. Civ. App.) 42 S. W. 573. There is an interesting discussion of this whole subject in the notes to Garrison v. Union Trust Co., 139 Mich. 392, 102 N. W. 978, 70 L.

R. A. 615, 5 Ann. Cas. 813, and reference is especially made to paragraph "a" of subdivision 1, page 419, in 111 American State Reports, p. 425.

We have carefully read all the assignments and propositions contended for by appellants and likewise those discussed by appellee and contended for. We do not think there were sufficient facts presented that authorized the submission to the jury of any issue of fact.

The material facts are substantially uncontradicted, and we therefore hold that the trial court was correct in the first instance in withdrawing the case from the jury, and that the court erred in granting a new trial.

The order of the trial court granting a new trial is reversed, and judgment is now rendered in favor of appellants overruling such motion for new trial, and that appellants recover all costs of this appeal and of the trial court.

Reversed and rendered.