In re SAVOIA MACARONI MFG. CO., Inc.

Appeal of MERCANTILE CONTRACT PURCHASE CORPORATION et al.

No. 26.

Circuit Court of Appeals, Second Circuit.

Nov. 4, 1935.

I. Bregoff, of New York City (I. Bregoff and D. J. Orgain, both of New York City, of counsel), for appellants.

Furst, Schwartz, Schwager & Landau, of Brooklyn, N. Y. (H. Sidney Landau, of Brooklyn, N. Y., and Hamilton Lieb, of New York City, of counsel), for trustee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellants held conditional sale contracts on certain macaroni-making machinery in possession of the bankrupt. These contracts had been filed in the register's office of Kings county, N. Y., as required by state statute (N. Y. Personal Property Law [Consol. Laws, c. 41] §§ 62, 63). The bankrupt became financially embarrassed, and at a creditors' meeting, called for that purpose, an agreement was drawn whereby the creditors were given a measure of control over the bankrupt, and the creditors agreed to accept stipulated monthly payments, the unsecured 2 per cent. and the secured creditors 4 per cent. of their claims. This agreement was to become effective on the signature of two-thirds of the creditors

not secured by mortgages. Though the appellants signed, the requisite number did not, and the agreement never became effective. Despite this, the creditors' committee sent a letter about a month after the agreement was drawn, which it is said may be construed as a representation that the agreement was in effect. The vice president of the appellant Mercantile Contract Purchase Corporation was a member of the creditors' committee which had signed the letter.

The agreement provided: "This agreement shall go into effect on the signature and acceptance by two-thirds of the aggregate amount of unsecured creditors of the corporation and the creditors secured by liens on the machinery only." It is undisputed that the necessary two-thirds did not sign, and it is urged that no surrender or estoppel as to the appellants' rights could arise through having signed an agreement, wherein it was expressly provided that the agreement would not become effective until a requisite number of signatures had been obtained.

The agreement divided the creditors into five classes: (a) Creditors secured by real property and mortgages on improvements; (b) creditors secured by liens on machinery; (c) bank creditors; (d) general creditors; (e) creditors with amounts of less than $500 each. Appellants were within the (b) classification. The agreement provided that classes (c), (d), and (e) were unsecured creditors, implying thereby that classes (a) and (b) were secured creditors. Moreover, the agreement indicates the intention of the parties that secured creditors retain their security.

The agreement was dated January 12, 1932, and the Savoia Macaroni Manufacturing Company, Inc., became a bankrupt January 24, 1933. Its assets were ordered sold, free and clear of liens, and the referee having later determined that the appellants had waived their conditional sale lien by signing the agreement above mentioned, refused to allow them the lien on the proceeds. This was confirmed by the District Court, and these appeals followed.

The argument made in support of the claim against the lien of appellants is that the vice president's letter estopped the Mercantile Company from advancing its claim to the lien. The Consolidated

Company was held estopped merely for signing the agreement. The agreement provided that: "The consideration for the agreement is the agreement of each other person; and the forbearance of each individual signatory from the exercise of his individual rights of action and the acceptance in lieu thereof of the arrangement herein set forth."

The agreement provided that schedules be prepared to indicate the exact status of each class of creditors, empowered the corporation, at the committee's direction, to make notes for expenses but stipulated that "no account may be secured which is not now secured." The purpose of the agreement is indicated by the recital that the signatories believe that the bankrupt could become prosperous and that they desired to give it a chance to do so by accepting an arrangement for the payment of their debts over a reasonable period of time.

In support of the order entered, In re Goldman-Rosenzweig Co., Inc., 65 F.(2d) 390 (C. C. A. 2), is referred to. There this court held that participation in an assignment estopped the creditor so participating from thereafter filing a petition in involuntary bankruptcy against the assignor and alleging the assignment as an act of bankruptcy. In the case at bar, the facts differ, for the bankrupt filed a voluntary petition. Nor is the doctrine there announced an obstacle. If the creditors here agreed to waive their security and relinquish their lien, the cases would be similar. They agreed, however, only to stay proceedings in order to allow the debtor more time. This the agreement makes clear.

The purpose of the agreement was to delay the collection of debts. It expressly recognized the secured position of some creditors, and it was stipulated that a schedule be drawn indicating their status as secured or unsecured. The proceeding was, as far as the appellants are concerned, the same as if they had received a note from the conditional vendee —the bankrupt—which allowed it an extension of the time to pay. By the receipt of such a renewal note, the conditional vendors do not waive their lien. Arthur v. G. W. Parsons Co., 224 F. 47 (C. C. A. 6); Beall v. Hudson County Water Co., 185 F. 179 (C. C. N. J.).

See Thornton v. Findley, 97 Ark. 432, 134 S. W. 627, 33 L. R. A. (N. S.) 491; Hughes v. Atlantic City & S. R. Co., 85 N. J. Law, 212, 89 A. 769, L. R. A. 1916A, 927; 13 A. L. R. 1049.

The consideration for the agreement in the instant case is forbearance in the exercise of the rights of action. But this does not mean that the status of the rights as liens should be affected by mere agreement to stay the exercise of the rights. Forbearance does not mean surrender.

The state courts have expressly ruled that participation in an assignment, even though dividends are received thereunder, does not relegate a lien creditor to the position of a general creditor. Peterson v. Bergman Cabinet Mfg. Co., 145 Wash. 664, 261 P. 381, 55 A. L. R. 989; Cockrill v. Joyce, 62 Ark. 216, 35 S. W. 221; Moses v. Thomas, 26 N. J. Law, 124. In Atlantic Phosphate Co. v. Law, 45 S. C. 606, 23 S. E. 955, the lienor expressly reserved his right to his security, while participating in the assignment. This in effect is what the appellants did in the instant case. That they meant to maintain their secured position is evident from the agreement's stipulation that "no account may be secured which is not now secured." If the appellants were secured before the assignment, and were now to be relegated to the position of general creditors, it would have been quite sufficient to say no new accounts are to be secured. We cannot regard the provision that was inserted as a mere redundant surplus. It meant that the creditors secured should remain in that class.

Neither the agreement nor the letter of the vice president of the Mercantile Company estopped the appellants from asserting the validity of their liens. The extent of its operation would have been to estop them from bringing replevin actions while the bankrupt was paying according to its agreement.

The order will be reversed and an order entered in the District Court granting a reference to determine what proportion of the proceeds of the sale may be properly allocated to the sale of the machinery upon which the appellants held conditional vendors' liens.

Order reversed.