EDWARD SIMONTON, Assignee, *vs.* FIRST NATIONAL BANK OF
MINNEAPOLIS and THE MISSIONARY SOCIETY OF THE
METHODIST EPISCOPAL CHURCH, interpleaded.

October 19, 1877.

**Principal and Agent—Deposit of Money to Pay a Debt—Power of Revocation.—**
When a debtor delivers to a third person money to pay to his creditor,
the relation between the debtor and third person is that of principal and
agent, until the creditor assents to the transaction; and, until such
assent, the debtor may revoke the intended appropriation.

**What Constitutes a Revocation.—**Any disposition by the debtor, such as an
assignment for the benefit of creditors, inconsistent with the appropria-
tion first intended, will be a revocation.

**Presumptions as to Knowledge and Consent of Creditor.—**The assent of the
creditor to the deposit with the agent may be presumed when he has
knowledge of it, but his knowledge of it will not be presumed.

This action was brought in the district court for Ramsey
county, by Edward Simonton, as assignee of Parker Paine,
against the First National Bank of Minneapolis, to recover
the sum of $3,719.21, received by the said defendant from
the said Paine, October 5, 1874. An action was subsequently
brought in the district court for Hennepin county, by the Mis-
sionary Society of the Methodist Episcopal Church, against
the same defendant, to recover the same sum of money. The
said bank thereupon deposited the money in controversy with
the clerk of the district court for Ramsey county, and pro-
cured an order from the said court discharging the said bank,
and substituting the said missionary society as defendant.
The action was thereafter tried before *Wilkin*, J., without a
jury. The plaintiff claimed the fund as assignee of Parker
Paine, under a deed of assignment executed and delivered on
the afternoon of October 5, 1874, in the city of St. Paul, and
adduced evidence to establish this fact. The defendant, upon
the other hand, introduced in evidence a certificate of deposit
issued by the First National Bank of Minneapolis, dated
October 5, 1874, which stated that Parker Paine had depos-

ited with the said bank $3,719.21, to take up his certificates of deposit payable to the order of Rev. J. T. Lewton, treasurer of State M. E. Conference. The president of the bank also testified that Paine came to the bank about noon, October 5, 1874, and stated to him that he wanted to deposit in the bank $3,719.21, for the purpose of paying certain certificates of deposit which he had issued to Rev. J. T. Lewton, treasurer of State Methodist Conference; that he told Paine, "Very well, we will take the money and pay the certificates," that it was possible that Paine said something about wanting it fixed so that neither he nor any one else could draw it but Lewton, or the owners of the certificates; that he had an impression that Paine might have said something of the sort, but could not say that he recollected it; that Paine then gave the numbers and amount of each certificate, and paid over the amount of money; and that he gave Paine the receipt or certificate in evidence. The defendant having adduced further evidence and rested, the court, upon motion of the plaintiff, instructed the jury to find a verdict for the plaintiff. The jury having accordingly found a verdict for the plaintiff, and a motion for a new trial having been denied, the defendant appealed.

*W. E. Hale,* for appellant.

*R. J. Reid,* for respondent.

GIFILLAN, C. J. The agent of the missionary society deposited with Parker Paine, a banker, certain sums of money of the society, amounting to $3,719.21, and took Paine's certificates of deposit therefor. Afterwards, on October 5, 1874, Paine deposited with the First National Bank of Minneapolis $3,719.21, and took from it a certificate as follows: "Parker Paine has deposited with this bank $3,719.21, to take up his certificates of deposit payable to the order of Rev. J. T. Lewton, treasurer M. E. Conference"—then follows a description of the certificates, being the same issued by Paine, as above stated. It does not appear that there was any previous arrangement between Paine and the society, or any one on its behalf, pursuant to which this deposit by him was made;

and it appears that the first notice which the society or its agent had of the deposit was several days after it was made. The conversation between Paine and the officers of the bank, at the time of the deposit, was proved, but it could not in any substantial particular vary the character of the transaction, as set forth in the certificate.

After the deposit, and on the same day, Paine made a general assignment to plaintiff, for the benefit of his creditors. Some days after the assignment the agent of the society, receiving notice of the deposit, presented to the bank the certificates of Paine, mentioned in the certificate of the bank to him, and also the latter certificate, and demanded payment. At that time the bank had notice of Paine's assignment, and for that reason declined to pay the certificate to the agent. This action having been brought by Paine's assignee to recover the money, it brought the money into court, and caused the missionary society, which had also sued it for the money, to interplead and be substituted in its stead, as defendant in this action.

The cause was tried by a jury, and the foregoing facts appearing beyond any controversy, the court directed a verdict for the plaintiff. There were only questions of law in the case, and it was proper for the court to direct what verdict should be rendered.

The first and principal question in the case is, to whom did the claim for the money deposited with the bank belong, at the time of Paine's assignment to plaintiff? If it belonged to Paine, it passed by the assignment; if to the society, or to the bank as trustee for the society, it could not so pass. If the bank, on receiving the money, stood in the relation of agent or bailee, it was certainly agent or bailee for Paine. There was no previous arrangement by which the society had constituted the bank its agent to receive the money, nor any by which it had given Paine authority to appoint any agent or bailee for it; and he certainly could not, without its knowledge or consent, make the bank its agent, so that

delivery to the bank would be in law delivery to the society. If he assumed to make the bank its agent, it might subsequently affirm his act; but, until such ratification, it would stand toward the bank in the relation of a stranger.  Treating the case as one of agency on the part of the bank, this is decisive of it, for as the bank held the money as Paine's agent, to be used in his business, to-wit, in paying his debt, it was, of course, until the relations should be changed, subject to his absolute control.

It is claimed that, although the deposit with the bank could not operate as a legal transfer of the money to the society, it may be treated as an equitable assignment to it. There may be an equitable assignment where the owner of property, intending to transfer it to another, does all that is in his power to give effect to such intention, or where, by mistake or inadvertence, some formality to a legal transfer is omitted, but there can be none except to carry into effect the actual intention.  In this case the intention to make a present, unconditional and absolute transfer to the society was wanting.  The object of Paine was to pay his debt with the money; he intended it to become the money of the society only when it should be accepted in payment of his debt, and not otherwise.  He intended the vesting of the title to the money in the society, and the extinction of the debt he owed, to be simultaneous; and as he could not effect a discharge of his debt by simply delivering the money to the bank, a stranger, he cannot be supposed to have intended to part with the ownership of the money and have it vest in the society by such delivery.  This consideration refutes the proposition that a trust in favor of the society was created by the deposit of the money, for an absolute, irrevocable trust could be created only upon an intention of Paine to part with his interest in, and control over, the money, by vesting the legal title to it in the bank, leaving his debt undischarged until the bank might execute the trust.  It is clear he had no such intention.  The transaction is the very com-

mon one of a debtor, who, for his own convenience, or any other motive, delivers money to another person to be paid to his creditor in discharge of a debt. That in such case the creditor may become a party to the transaction by assenting to it, and thus acquire irrevocable rights with respect to the money in the hands of the agent, is probably true; and it is also true that, until some such action on the part of the creditor, the original relation of principal and agent will continue between the debtor and the person to whom he has delivered the money, and the debtor may appropriate it to any other purpose. That the transaction is a beneficial one to the creditor may furnish a reason for presuming his assent when he knows of it, and does not dissent; but proof merely of the transaction between the debtor and his agent furnishes no ground to presume knowledge of it in the creditor.

As the society had not assented to the deposit with the bank, and acquired a right to the money before the assignment to plaintiff, Paine's intent to appropriate it to payment of his debt to the society was at that time revocable. It would be revoked by any disposition of the money by Paine inconsistent with the appropriation at first intended. 2 Story Eq. Jur. §§ 1046, 1196; *Scott* v. *Porcher*, 3 Merivale, 651; *Wallwyn* v. *Coutts*, Id. 707; *Dole* v. *Bodman*, 3 Met. 139; *Kelly* v. *Roberts*, 40 N. Y. 432.

The assignment to plaintiff in trust, to pay the creditors generally, was inconsistent with Paine's original intention to appropriate it exclusively in payment of his debt to the society. No notice to the bank of the revocation was necessary, so far as the mere question of title to the money was concerned, though want of notice might have protected it had it paid the money to the society as at first intended.

The order is affirmed.

CORNELL, J., did not sit in this case.