# CITIZENS STATE BANK OF HAMILTON, MONTANA, v. E. A. TESSMAN & COMPANY.[1]

February 28, 1913.

Nos. 17,799—(183).

**Payment of checks stopped — action against drawer.**

1. Defendant Kraemer had a deposit and check account with plaintiff bank. He deposited five checks given by defendant Tessman & Co., a corporation, and received credit for the amount. At about the same time he gave to Tessman & Co. and its officer checks on plaintiff bank for nearly the same amount. Plaintiff paid these checks, but on presenting Tessman & Co.'s checks for payment they were dishonored, leaving Kraemer's account overdrawn in at least that amount. Substituted checks were then given by Tessman & Co., for the same amounts as the original ones with protest fees added, and were forwarded in lieu thereof to plaintiff bank with a general indorsement. The bank advised Kraemer that these checks would be taken for collection, and Kraemer acquiesced. Tessman & Co. then stopped payment on these checks and settled with Kraemer therefor, knowing that plaintiff had the checks. *Held*, that plaintiff bank can maintain an action on the checks against Tessman & Co.

**Action by indorsee under unrestricted indorsement.**

2. An unrestricted indorsement of a check confers on the indorsee the legal title and the right to sue thereon, although the check is taken for collection.

**Indorsement "for collection."**

3. If the indorsement is restricted by the words, "for collection," no right to sue is conferred.

1 Reported in 140 N. W. 178.

**Revocation of authority to collect — settlement with drawer.**

4. Where the indorsement is unrestricted, but there is an agreement that the indorsee is in fact merely an agent for collection, that fact may be shown, and if the agency is a naked agency to collect, the indorser may revoke the agency and make a settlement with the drawer of the checks.

**Agency irrevocable, when.**

5. Where the agency is coupled with an interest, or where it is given for a valuable consideration, or where it is part of a security, the agency is irrevocable.

**Same.**

6. In this case the bank had an agency coupled with an interest. It had the legal title, with power to act in its own name, and a substantial interest in the subject-matter. Kraemer had no power to revoke the agency or to demand a return of the checks or their proceeds, or to prejudice the rights of the bank by a settlement with Tessman & Co. as long as the overdraft was unpaid.

**Pleading and proof.**

7. The allegations of the complaint are to the effect that plaintiff is the owner of the checks. Such an allegation is sustained by proof of any legal title. The legal title proved in this case is sufficient to sustain these allegations.

**Finding of indorsement and delivery — finding of "ownership."**

8. A finding that checks were indorsed and delivered to the plaintiff imports everything necessary to pass the legal title from the indorser to the indorsee. A finding of "ownership" in express terms is in such case not necessary to support a judgment.

**Indorsee for value.**

9. It is only where a defense arises before indorsement that the question whether the plaintiff is an indorsee for value within the law merchant becomes material.

Action in the district court for St. Louis county against E. A. Tessman & Co. and P. G. Kraemer to recover $2,016 upon five bank checks. Among other matters, the complaint alleged that defendant Kraemer duly indorsed and delivered the checks in suit to plaintiff, who thereby became the owner thereof; that plaintiff duly indorsed and presented them for payment to the bank in Duluth on which they were drawn, but payment was refused by the bank on the ground that defendant E. A. Tessman & Co., subsequently to the drawing of

the checks had directed the bank not to pay them; that defendant company had so directed the bank; that immediately thereafter defendant Kraemer was notified that the checks had been presented for payment and payment refused.

Defendant E. A. Tessman & Co. in its answer admitted that payment of the checks was refused by the bank at Duluth upon the ground that the answering defendant had stopped payment of the checks and that this defendant had so directed the bank. 'It also alleged that prior to the commencement of the action and while defendant Kraemer was the owner of the checks, and without knowledge that plaintiff claimed any interest in the checks or was the holder thereof, and upon the belief that defendant Kraemer was the owner thereof, the answering defendant paid and satisfied the amount of the checks to defendant Kraemer, and he agreed with the answering defendant that the checks should be canceled and discharged.

In his answer defendant Kraemer alleged that the checks described were sent by him to plaintiff and received and retained by it solely as agent for defendant for collection only, for the purpose of placing the proceeds of the same to defendant's account in plaintiff's banking house, and for no other purpose. The other material allegations of the complaint were denied.

The amended reply to the answer of E. A. Tessman & Co. denied the new matter in that answer and alleged that plaintiff purchased two of the checks before their dishonor in good faith, and in due course of business, without notice of any failure of consideration, or other defect, and paid a valuable consideration therefor, and at all times plaintiff was a bona fide purchaser of the checks for value in the regular course of business, without knowledge or notice of any defect therein or defense thereto.

The case was tried before Dancer, J., who made findings and ordered judgment in favor of plaintiff against defendant E. A. Tessman & Co. From the judgment entered pursuant to the order for judgment, and from an order denying its motion for an amendment of the conclusions of law, defendant E. A. Tessman & Co. appealed. Affirmed.

· *Warner E. Whipple,* for appellant.
*Alford & Hunt,* for respondent.

Hallam, J.

Defendants Tessman & Co. and Kraemer are both engaged in business in Duluth. Plaintiff bank is located at Hamilton, Montana. In 1909 defendant Kraemer opened a checking account with the bank, and continued to be a depositor and customer until after the occurrence of the events hereinafter narrated.

Some time early in 1910 defendant Tessman & Co. gave defendant Kraemer five checks on a Duluth bank aggregating $2,000. These checks were indorsed and delivered by Kraemer to plaintiff bank and deposited therein to his credit. One thousand nine hundred and sixty-five dollars of this amount was immediately checked out by Kraemer, and paid by the bank on checks payable either to Tessman & Co. or to its officer, Christ Sanders. When the checks issued by Tessman & Co. were presented to the Duluth bank for payment they were all dishonored, and plaintiff bank charged them back to Kraemer and returned them to him. As a result of these transactions the account of Kraemer in plaintiff bank was overdrawn by the amount of these checks, and in fact more, and said overdraft has never been reduced below that amount. Subsequently Tessman & Co. executed and delivered to Kraemer a second batch of five checks on said Duluth bank, in lieu of the first batch, and for the same amounts with protest fees added, and Kraemer indorsed and delivered them to plaintiff, in lieu of the dishonored checks, and to make good the overdraft caused thereby. These are the checks sued on in this action.

Prior to this time there was no express agreement as to terms and conditions upon which checks and other commercial paper deposited by Kraemer should be received and held by the bank. It had come to be the custom and understanding between them, however, that all checks deposited by Kraemer should be credited to his checking account, and if any were dishonored, that they should be charged back and returned to him.

Upon receipt of the second batch of checks plaintiff declined to credit the amount to Kraemer's account, but entered and held them for collection. Kraemer was so advised, and acquiesced. These checks were in due course presented to the Duluth bank for payment. In the meantime Tessman & Co. had stopped payment on

them, and payment was refused. The checks were thereupon returned to plaintiff bank, and it has held them ever since. No part thereof has ever been paid.

Prior to this suit Kraemer and Tessman & Co. had an accounting and settlement, in which Kraemer received and acknowledged payment of all sums due him from Tessman & Co. on account of, or growing out of, all prior dealings between them. This settlement was without the knowledge or consent of plaintiff. At the time the settlement was made, defendants had full knowledge of the possession of said checks by plaintiff bank. The court on these facts gave judgment for plaintiff against Tessman & Co. for the amount of the checks and interest, and Tessman & Co. appeals from the judgment.

1. On principle the bank should recover. It gave Kraemer a fictitious credit of $2,000, based entirely on Tessman & Co.'s dishonored checks. By reason of this fictitious credit, Tessman & Co. and its officer were enabled to draw out of this bank $1,965 on checks issued to them by Kraemer. Tessman & Co. then gave a second batch of checks, which were forwarded to make good the overdraft caused by its own acts and default. It then stopped payment on these checks, and, knowing that the bank had the checks, it now claims to have paid them to Kraemer instead of to the bank. It defends this suit on the ground that the bank declined to credit the second batch of checks as cash, but, instead, entered them for collection, and claims that it was accordingly justified in ignoring the bank and making settlement with Kraemer. Appellant's position cannot be sustained either on principle or authority.

2. The indorsement of the checks was unrestricted, and their indorsement and delivery gave the bank the legal title. By an almost unbroken line of decisions this confers a right to sue thereon, even though the indorsee is in fact an indorsee for collection only. Vanstrum v. Liljengren, 37 Minn. 191, 33 N. W. 555; Elmquist v. Markoe, 45 Minn. 305, 47 N. W. 970; Anderson v. Reardon, 46 Minn. 185, 48 N. W. 777; Minnesota Thresher Mnfg. Co. v. Heipler, 49 Minn. 395, 52 N. W. 33; St. Paul Title Ins. & Trust Co. v. Thomas, 60 Minn. 140, 61 N. W. 1134; Orr v. Lacy, 4 McLean,

243, Fed. Cas. No. 10,589; Purdy v. Brown, 4 Ark. 535; Curtis v. Sprague, 51 Cal. 239; First Nat. Bank v. Hughes, 46 Pac. 272; McCallum v. Driggs, 35 Fla. 277, 17 South. 407; Laflin v. Sherman, 28 Ill. 391; Mead v. National Bank of Fayetteville, 6 Blatchf. 186, Fed. Cas. No. 9,366; Manley v. Park, 68 Kan. 400, 75 Pac. 557, 66 L.R.A. 967, 1 Ann. Cas. 832; Demuth v. Cutler, 50 Me. 298; Moore v. Hall, 48 Mich. 143, 11 N. W. 844; Wintermute v. Torrent, 83 Mich. 555, 47 N. W. 358; Roberts v. Snow, 27 Neb. 425, 43 N. W. 241; Robinson & Carson v. Crandall & Vincent, 9 Wend. (N. Y.) 425; Ward v. Tyler, 52 Pa. St. 393; Farmers Bank v. Penn Bank, 123 Pa. St. 283, 16 Atl. 761, 2 L.R.A. 273; 8 Cyc. 83. Such an indorsee is the real party in interest within the meaning of the Code. Anderson v. Reardon, 46 Minn. 185, 48 N. W. 777; Minnesota Thresher Mfg. Co. v. Heipler, 49 Minn. 395, 52 N. W. 33; Seybold v. National Bank, 5 N. D. 460, 67 N. W. 682; Mead v. National Bank of Fayetteville, 6 Blatchf. 186, Fed. Cas. No. 9,366. In such a case courts will never inquire whether a plaintiff sues for himself or as trustee for another nor into the right of possession unless in an allegation of mala fides. 2 Daniel Neg. Inst. § 1191.

3. Rock County Nat. Bank v. Hollister, 21 Minn. 385, cited by appellant, is not inconsistent with this rule. There the indorsement was restrictive in form. The words used were: "Pay to Rock County National Bank * * * for collection." Such an indorsement does not confer the right to sue. The distinction between such restrictive indorsement and an unrestricted indorsement is generally recognized. Rock County Nat. Bank v. Hollister has repeatedly been distinguished on this ground. Jackson v. Sevatson, 79 Minn. 275, 278, 82 N. W. 634; Seybold v. National Bank, 5 N. D. 460, 67 N. W. 682; Roberts v. Snow, 27 Neb. 425, 43 N. W. 241; 7 Cyc. 808.

4. Appellant contends that, though the indorsement was unrestricted, it was perfectly competent to show that the checks were in fact held for collection; that in such case the indorsee was the agent of the indorser; that the agency was revocable; and that a settlement with the indorser is a defense to an action by the indorsee. It is

undoubtedly competent to show that, although the indorsement is in terms absolute, the paper was in fact indorsed and delivered for collection. In re State Bank, 56 Minn. 119, 57 N. W. 336, 45 Am. St. 454. It does not follow, however, that the rights conferred on the indorsee are in such case revocable by the indorser, or that the indorser can deprive the indorsee of his rights by a settlement with the drawer of the checks. If the agency is a naked agency to collect, then only a bare legal title passes, even by an unrestricted indorsement, and the indorser may undoubtedly revoke the agency, and may make a settlement, which will operate as a cancelation of the checks and as a good defense to an action thereafter brought by the indorsee. Simonton v. First Nat. Bank, 24 Minn. 216; Alworth v. Seymour, 42 Minn. 526, 528, 44 N. W. 1030.

5. But this is not true of every agency. There are three classes of cases where the authority of the agent cannot be revoked: First, when the agency is coupled with an interest; second, where it is given for a valuable consideration; and, third, where it is part of a security. In any of these cases the indorsee agent has rights which are irrevocable, and which the indorser principal cannot take away until the interest of the indorsee agent has been satisfied. Buffalo Land & Expl. Co. v. Strong, 91 Minn. 84, 89, 97 N. W. 575; 31 Cyc. 1395, et seq.

6. We have no hesitation in holding that the bank in this case had an agency coupled with an interest. The general rules as to what constitutes an agency coupled with an interest are well settled.

The leading case on this subject is Hunt v. Rousmanier, 8 Wheat. 174, 5 L. ed. 589. Marshall, C. J., there said, at page 205: "If the interest, or estate, passes with the power, and vests in the person by whom the power is to be exercised, such person * * * is no longer a substitute, acting in the place and name of another, but is a principal acting in his own name, in pursuance of powers which limit his estate."

"It is not enough to constitute a power 'coupled with an interest' that plaintiff was to have an interest in the proceeds arising from the execution of the agency. There must be an interest in the thing itself which is the subject of the power. A 'power coupled with an

interest' is one ingrafted on an estate or on the thing itself, and the power and the estate must be united and coexist." Mitchell, J., in Alworth v. Seymour, 42 Minn. 526, 528, 44 N. W. 1030.

"A property in the thing which is the subject of the agency or power" is made the test in Bonney v. Smith, 17 Ill. 531, and this "must be vested in the person to whom the agency or power is given, so that in the event of the principal's death the authority could be exercised in the name of the agent." See, also, Oregon & W. M. Bank v. American Mtg. Co. (C. C.) 35 Fed. 22, and 1 Clark and Skyles on Agency, § 165.

In Peter v. Beverly, 10 Pet. 532, 564, 9 L. ed. 522, the court lays down this test: "It is the possession of the legal estate, or a right in the subject over which the power is to be exercised, that makes the interest in question"—and in Parsons on Contracts, *72, the author states the test as follows: "To determine whether the agency be thus irrevocable it is an important, if not a decisive, question whether the act authorized could be performed by the agent in his own name, or only by him as an agent, and in the name of the principal."

It is sometimes difficult to determine the precise boundary of these general rules, but it seems clear that this case is within every test laid down. Plaintiff was the legal holder of the checks, with power to collect, and act in its own name, and with a substantial interest in the subject-matter. It is clear that Kraemer could not have demanded the payment to him of the proceeds of these checks. It is clear that he could not have demanded the return of the checks themselves. It is equally clear that he could not cut the ground from under plaintiff's feet by making a settlement that would discharge them. Had there been nothing but a delivery of the checks for collection, without indorsement, and if they had arisen out of a transaction entirely independent of the overdraft, the bank would, according to the great weight of authority, have had a banker's lien thereon to the extent of the overdraft, with a right to hold the paper until its debt was paid. 1 Jones on Liens, § 244; Joyce v. Auten, 179 U. S. 591, 597, 21 Sup. Ct. 227, 45 L. ed. 332; Lehmann Brothers v. Tallassee Mfg. Co. 64 Ala. 567; Cockrill v. Joyce, 62 Ark.

216, 35 S. W. 221; Gibbons v. Hecox, 105 Mich. 509, 63 N. W. 519, 55 Am. St. 463; Garrison v. Union Trust Co. 139 Mich. 392, 102 N. W. 978, 70 L.R.A. 615, 111 Am. St. 407, 5 An. Cas. 813; Muench v. Valley National Bank, 11 Mo. App. 144; Davis v. Bowsher, 5 T. R. (Durnford & East) 488; Misa v. Currie, L. R. 1 App. Cases, 554. Plaintiff's right here is not technically a right of lien. It is more. It is a legal title conferred for a well-understood purpose. Being vested with the legal title, surely its right to hold the checks is not less than it would have been had it acquired merely a lien.

We accordingly hold that where checks are forwarded by a depositor to a bank, in lieu of previously dishonored checks, and to cover an overdraft created thereby, and they are so indorsed as to confer upon the bank the legal title, though they are entered by the bank for collection only, there is created an agency coupled with an interest, which confers upon the bank the right to hold the checks and their proceeds until its debt is paid. This interest of the agent cannot be divested or prejudiced by any act of the principal.

This proposition is sustained by the decisions in many illustrative cases.

In re Farnsworth, Brown & Co. 5 Biss. 223, Fed. Cas. No. 4,673, F. B. & Co. kept an account with a Chicago bank. They were in the habit of collecting bills against country customers by drawing drafts, which were indorsed to the bank and by the bank forwarded to a correspondent for collection. When paid the proceeds were passed to the credit of the firm in the general balance. The firm was indebted to the bank on a demand note for $5,000. The firm failed. Shortly before, and while in good standing, it handed to the bank a number of such drafts on which the bank collected *after bankruptcy* $1,200. It was held the bank could apply the money so collected on its own debt. It was contended that the bank was a mere agent of the firm for collecting the money, and that the agency was revoked by the adjudication of bankruptcy. The court said: "I think that it was something more than a naked agency. It was an agency coupled with an interest and duty."

In Shepard v. McNail, 122 Mo. App. 418, 99 S. W. 494, one Watson delivered to defendant his books of account, with authority to

collect the accounts and apply the collections in payment of a debt which he owed defendant. It was held that there was an agency coupled with an interest, and that the delivery of the books of account was pro tanto an equitable assignment of the accounts to the agent, and gave him such an interest in the accounts as to make his authority irrevocable.

In Stevens v. Sessa, 50 App. Div. 547, 64 N. Y. Supp. 28, an agent for the collection of rents had the leases in his custody. He loaned $2,000 to his principal. After $1,400 of it had been advanced he took from his principal an instrument empowering him, in the event of nonpayment of the loan before a certain date, to collect the rents of the property and to apply them to its payment. It was held that such instrument operated as a transfer of the leases to the agent, and if the instrument is regarded as creating a mere power, such power was coupled with an interest, and was not revocable until the loan was paid. See, also, Beecher v. Bennett, 11 Barb. (N. Y.) 374.

In Knapp v. Alvord, 10 Paige (N. Y.) 205, 40 Am. Dec. 241, a power of attorney to sell a stock of goods and apply the proceeds upon liabilities incurred, and to be incurred, by the donee of the power was given, accompanied by the possession of the goods. It was held that it was not revoked by the death of the principal because it was a power coupled with an interest. The fact that the possession of the goods accompanied the power was the controlling point in the decision.

In Merry v. Lynch, 68 Me. 94, the terms of the agency were that the agent was to sell the goods and out of the proceeds to pay certain liens and other claims and apply the balance first to the payment of certain notes he held against the principal, and return the overplus to the principal. The goods were delivered to him. It was held that there was an agency coupled with an interest, and that it was not revocable.

In Marziou v. Pioche, 8 Cal. 522, 536, it was laid down as a general rule that, where the principal who has assigned a debt to his agent gives a power to collect for the very purpose of providing the means to return advances made by the agent, there would seem to be no doubt as to the irrevocable character of the power, or that it was

a power coupled with an interest.   See, also, Posten v. Rassette, 5 Cal. 469.

Ferman v. Lombard Investment Co. 56 Minn. 166, 57 N. W. 309, is not parallel in its facts, but is illustrative of the principles here involved.   A mortgagor put the mortgagee in possession, assigned the rents and the leases, gave the right to enter and rent, collect rents, retain a commission, and apply the residue to pay insurance, repairs, taxes, and assessments, and to apply the balance on the interest and portion of the debt then due.   It was held a power coupled with an interest.

These decisions amply support the position of the plaintiff in this case.

7. Appellant contends that respondent cannot recover because he sues as owner of the checks, whereas the interest found by the court is that of agent.   As above indicated, the respondent is the owner and holder of the legal title.   Proof of such a title is sufficient to sustain an allegation of ownership.   This is true even though in fact plaintiff's legal title is not an absolute title.   A general allegation of ownership admits proof of any legal title.   McArthur v. Clark, 86 Minn. 165, 90 N. W. 369, 91 Am. St. 333; Miller v. Adamson, 45 Minn. 99, 47 N. W. 452; Klein v. Funk, 82 Minn. 3, 84 N. W. 460.

8. Appellant contends that there is no finding of ownership in respondent, that "the fact of ownership of the paper in question by plaintiff bank was a question of fact  *  *  *  and  *  *  *  the controlling and decisive question  *  *  *  and should be specifically covered by the findings," and that the court was "required to make a finding upon the ultimate fact of ownership."   We cannot concur in this contention.

Of course it is true that issues are formed by pleadings, and that the relief granted must be within the issues so formed, and a judgment must be responsive to the facts found.   We hold, in accord with these rules of law that there are findings here responsive to the allegations of ownership of the complaint which fully sustain the judgment.   The finding is that Kraemer "indorsed" and "delivered" these notes to the bank.   This is, in substance and legal effect, a finding of

ownership in the bank, since from those findings ownership necessarily follows. The term "indorse" has a well-defined meaning, and a finding of indorsement imports everything necessary to pass the legal title from the indorser to the indorsee. 14 Enc. of Plead. and Pr. 520; Snelgrove v. Branch Bank of Mobile, 5 Ala. 295; Pryce v. Jordan, 69 Cal. 569, 11 Pac. 185; Higgins v. Bullock, 66 Ill. 37; Rubelman v. McNichol, 13 Mo. App. 584; Brooks v. Edson, 7 Vt. 351; Perkins, Doe & Co. v. Bradley, 24 Vt. 66; Meyers v. Farmers' State Bank, 53 Neb. 824, 74 N. W. 252; Downer v. Read, 17 Minn. 470 (493).

9. The question whether the plaintiff is an indorsee for value within the law merchant is not important in this case. The defense in this case is predicated on a settlement made after the indorsement of the paper. Had plaintiff been a mere assignee without indorsement, its rights could not be prejudiced by any acts of defendants done after plaintiff's rights had accrued. It is only where a defense arises *before* the indorsement that the question whether the plaintiff is an indorsee for value within the law merchant becomes material.

Judgment affirmed.