(81 South. 54)

ALABAMA CITY, G. & A. RY. CO. v. KYLE et al. (7 Div. 943.)

(Supreme Court of Alabama. Nov. 28, 1918. Rehearing Denied Jan. 16, 1919.)

1. CORPORATIONS ☞374 — POWERS — CHARTERS.

The charter of a corporation, read in connection · with the general laws applicable to it, is the measure of its powers, but whatever under the charter and other general laws, reasonably construed, may be fairly regarded as incidental to the objects for which the corporation is created is not to be taken as prohibited.

2. CORPORATIONS ☞447—CONTRACTS—VALIDITY—PRESUMPTION.

· The capacity of corporations to make contracts necessary to enable them to accomplish the purpose of their creation is an incidental corporate power, so prima facie corporate contracts are valid, and the burden of showing invalidity rests on those impeaching them.

3. CORPORATIONS ☞487(1) — CONTRACTS — "ULTRA VIRES CONTRACT."

An "ultra vires contract" is one that is wholly and manifestly outside the charter or the constituent act of the corporation or some valid legislative act applicable to it, and contracts in this sense ultra vires import in general no corporate liability directly upon the contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ultra Vires.]

4. CORPORATIONS ☞586 — CONSOLIDATED CORPORATION—POWERS.

In determining the powers of a corporation formed after adoption of the Constitution of 1901 by the consolidation of corporations created under previous local acts, held that, though section 229 forbade special acts conferring corporate powers, yet in view of Code 1907, § 3504, the court must look, not only to the general laws, but to the local laws under which the constituent corporations were created.

5. CORPORATIONS ☞447 — POWERS — ULTRA VIRES CONTRACTS.

Where articles of a corporation formed by the consolidation of pre-existing corporations chartered under special acts in no way restricted the powers which the old corporations possessed, and further declared that the new corporation might guarantee any dividends and make contracts for the furthering of its business, held that the corporation which was engaged in the street railroad business, as well as furnishing of electricity, etc., might contract to pay a manufacturing company a sum of money on its removal of its plant from one point and reconstruction of the same on the corporation's right of way, etc.

6. CORPORATIONS ☞14(1)—ARTICLES OF INCORPORATION.

Const. 1901, § 233, declaring no corporation shall engage in any business other than that expressly authorized in its charter or articles of incorporation, does not inhibit the Legislature from allowing the articles of incorporation to include many and varied businesses.

7. CORPORATIONS ☞425(4) — AUTHORITY OF VICE PRESIDENT—EXECUTION OF NOTE—ESTOPPEL.

A corporation held estopped to deny the authority of its vice president to execute a note if in point of fact he was not so authorized.

8. CORPORATIONS ☞400 — OFFICERS — AUTHORITY—RESTRICTIONS.

It requires no express written authority to empower a particular officer or agent of a corporation to make, execute, or consummate contracts which the corporation itself is authorized to make, and the corporation cannot, by secret and private by-laws or ordinances, limit or restrict the apparent authority of general agents which it holds out to the world as having authority to contract.

9. CORPORATIONS ☞404(1) — AGENTS — AUTHORITY.

In the absence of any charter prohibition, a vote of a private corporation to confer authority on an agent to execute conveyance of personal property may or may not be evidenced by writing, and, when not so shown, may be proven orally.

10. BILLS AND NOTES ☞459 — ACTIONS — PARTIES.

Where a corporation executed notes making them payable to trustees, held, in view of Code 1907, §§ 2489, 2490, the trustees were proper parties to sue on the notes, for the person to whom payment may be legally made, and who may discharge the debtor, may sue in his own name.

11. BILLS AND NOTES ☞480—OWNERSHIP—PLEADING.

Special and sworn pleas, denying the ownership of notes by plaintiff, are necessary to put such matter in issue.

12. CONTRACTS ☞324(1)—ACTIONS—BREACH.

Where defendant pursuant to contract executed notes, nonpayment of the notes was not a breach of the contract, and action upon the notes could not be considered as one upon breach of the contract to give the notes.

13. RAILROADS ☞179—ACTIONS—PARTIES.

Where · defendant railroad corporation, which was engaged in the business of transporting passengers, furnishing of electricity, etc., contracted with a manufacturing company that, if the latter would reconstruct its plant at a point on defendant's line, the corporation would execute and · deliver to trustees notes for the benefit of the company, held that the notes

having been executed and made payable to the trustees as such, the trustees cannot sue for breach of contract to which they were strangers.

14. CONTRACTS ⊜10(1)—MUTUALITY.

It is indispensable to the validity of a contract that it should be mutually obligatory upon both parties, or it will bind neither.

15. CONTRACTS ⊜186(1), 187(1)—ACTIONS—STRANGERS.

Generally, an entire stranger to the consideration is not regarded as a party to, and cannot maintain an action on, a simple contract, although if one person makes a promise to another for the benefit of a third, such person may maintain an action upon the promise, though the consideration does not move from him.

16. PARTIES ⊜7(1)—ACTIONS—INTEREST.

To authorize a plaintiff to sue on a legal demand, he must show a legal interest in himself.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Action by T. S. Kyle and another, trustees, against the Alabama City, Gadsden & Attalla Railway Company. From judgment for plaintiffs, defendant appeals. Reversed and remanded.

Goodhue & Brindley and Dortch & Allen, all of Gadsden, for appellant.

Culli & Martin, W. J. Boykin, Alto V. Lee, and O. R. Hood, all of Gadsden, for appellees.

This cause was submitted and determined under new rule 46 (178 Ala. xix, 65 South. vii), Mr. Justice MAYFIELD delivering the opinion of the court.

Statement of Case.

Appellees sued appellant. The complaint contained nine counts. All the counts except the first and the ninth were eliminated, and their elimination is not questioned on this appeal. Count 1 is in Code form, on a promissory note. The note sued on is in words and figures as follows:

"Gadsden, Ala., July 22, 1909. $4060.00.

"No. ——.

"Six months after date we promise to pay T. S. Kyle and E. T. Hollingsworth, trustees, or order four thousand and sixty dollars for value received with 6% interest from maturity until paid, payable at the First National Bank of Gadsden, Ala.

"The makers and indorsers of this note hereby expressly waive all right to claim exemption allowed by the Constitution and laws of this state or any other state, and agree to pay cost of collecting this note, including reasonable attorney's fee for all services rendered in any way in any suit against any maker or indorser, or in collecting or attempting to collect, or in securing or attempting to secure, this debt, if this note is not paid at maturity. Notice and protest on the nonpayment of this note is hereby waived by each maker and indorser.

"Ala. City, Gadsden & Attalla Ry. Co.,
"By E. T. Schuler, V. Pt.
"P. O. Gadsden."

Count 9 declared as for a breach of contract, which contract consisted of a letter the proposals of which were accepted and acted upon by the addressee, and parties interested therein. The letter was in words and figures as follows:

"Gadsden, Ala., July 22, 1909.

"Mr. W. H. Hassinger, Prest. Southern Iron & Steel Co., Birmingham, Alabama—Dear Sir: In consideration of your moving the entire rod and wire mill now located at Ensley, and reconstructing same upon an enlarged scale at, or adjoining, your present Alabama City plant, and putting same in operation,

"We, the undersigned, who would be benefited thereby agree to pay to the Southern Iron & Steel Company the sum of: Twelve thousand one hundred eighty dollars in cash, to be paid as follows:

"We will execute note, with security, payable in six months after notice of your acceptance of this proposal for ⅓ of the above amount, and note of the same date for ⅓ payable in twelve months and ⅓ payable in 18 mos., and will deposit same with T. S. Kyle and E. T. Hollingsworth, of Gadsden, Ala., as trustees, or with other parties satisfactory to you.

"This will be the trustees' authority to deliver the note payable in six months, to you, so soon as the mill is half completed, and the twelve months note and eighteen months note when the mill is completed and has been in operation for a period of thirty days.

"Will give you thirty days in which to accept or reject this proposition. Notice of acceptance may be given in the newspapers or otherwise.

"Ala. Cy., Gadsden & Attalla Ry. Co.,
"By E. T. Schuler, Vice Pt.
"Witness: ——"

The original action, which was on count 1 alone, was brought April 2, 1910. Count 9 was added October 5, 1917. Defendant demurred to each count, and objected to the allowance of the amendment by adding count 9, and moved to strike the same as improperly filed and as constituting a departure, and upon other grounds. The demurrer and motion of defendant being overruled, defendant filed a plea of non est factum to count 1, and a plea of ultra vires and many other special pleas to count 9. Demurrer was interposed to all of the special pleas, and was sustained as to some, and overruled as to others. To some of the special pleas filed, the plaintiff interposed replications 2 and 4, which were as follows:

"(2) And for further replication to each of said pleas 9, 10, 11 and 17, plaintiffs say that the cause of action stated in the counts of the

complaint to which said pleas are filed arose from the same transaction from which the cause of action stated in the original complaint at the commencement of this suit arose, and for that reason said causes of action stated in the several counts to which each of said pleas is filed are not barred by the statute of limitations as pleaded."

"(4) For further replication to defendant's pleas 2, 12, 13, 14, 15, 16, and 19, plaintiffs say that at the time of the making of the contract, incurring the liability or obligation sued on in each of the counts to which said pleas are filed, the defendant possessed and had the power and authority to contract as set out in the joint agreement of consolidation of the Alabama City, Gadsden & Attalla Railway Company and the Gadsden Railway, Light & Power Company, which joint agreement of consolidation was entered into by said two corporations in the year 1906, a copy of which said joint agreement is attached to this replication and made part thereof, as Exhibit A; that at and before the making of said note and contract and at the time of incurring the obligations and rights of action stated in each of the counts of the complaint to which each of said pleas are filed, the defendant corporation was engaged in the operation of street railways in the cities of Gadsden, Alabama City, and Attalla, one of which of its said lines of railway extended from the city of Gadsden through the city of Alabama City to the city of Attalla, and within such distance from the place, or site, to which said rod and wire mill was to be removed and reconstructed on an enlarged scale and put in operation that the employés of said rod and wire mill could reach the same from the said line of street railway, said line of street railway being located within such distance of said site as to enable the employés of said rod and wire mill residing at Gadsden and Attalla to travel to and from their work on said line of street railway; that at that time the defendant corporation was also operating an electric plant in the city of Gadsden for the production of currents of electricity for heating, lighting, power, and other purposes and was selling said currents of electricity to the public in the city of Gadsden; that at that time the defendant corporation was also operating in the city of Gadsden an ice plant in which it manufactured ice for sale and distribution to the public in said cities of Gadsden, Alabama City, and Attalla, and was also conducting a coalyard and selling coal to the public in said cities of Gadsden and Alabama City; that the removal of said rod and wire mill and the reconstruction of the same on an enlarged scale and the placing of the same in operation, and when placed in operation, did require a large number of employés in the operation of the same, to wit, 1,500 men, many of whom resided in the cities of Gadsden and Attalla and many of whom traveled to and from their work on said line of defendant's street railway extending from Gadsden through Alabama City to Attalla; that the removal and reconstructing on an enlarged scale and the placing in operation of said rod and wire mill has greatly increased the population of said cities of Gadsden and Alabama City, and caused many new houses to be constructed and many people to move into said cities, all of which has resulted in a greatly increased travel on de-

fendant's street railway lines, and greatly increased consumption of the currents of electricity produced by it, and has greatly increased the sales of coal sold by it in its coalyard; all of which has resulted greatly to the benefit of defendant and to the development, benefit, promotion, and increase of the businesses being conducted by the defendant and which it had power and authority to conduct."

To these replications demurrers were interposed and overruled. The trial resulted in a verdict and judgment for plaintiffs in the sum of $18,047.91. From this judgment defendant prosecutes this appeal, assigning many errors.

Opinion.

The first error insisted upon is that the execution of both the note and the contract sued upon was ultra vires the powers of the defendant corporation.

[1] The charter of a corporation, read in connection with the general laws applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against it. But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation was created is not to be taken as prohibited. Green Bay & M. R. Co. v. Union S. B. Co., 107 U. S. 98, 2 Sup. Ct. 221, 27 L. Ed. 413; 10 Cyc. 1097.

[2] The capacity of corporations to make contracts necessary and proper to enable them to accomplish the purpose of their creation is an incidental, corporate power, and there is no presumption of illegality or abuse or excess of power attaching to the contracts of corporations. Prima facie they are valid, and the burden of showing invalidity rests upon those impeaching them. Allen v. West Point Co., 132 Ala. 295, 31 South. 462.

[3] An ultra vires contract is one that is wholly and manifestly outside of the charter or constituent act of the corporation or some valid legislative act applicable to it, and contracts in this sense ultra vires import, in general, no corporate liability directly upon the contract. Corporations have no powers except those which their charters confer expressly or as incidental to their existence. Bluthenthal & Bickert v. Headland, 132 Ala. 249, 31 South. 87, 90 Am. St. Rep. 904.

[4] Prior to the Constitution of 1901, most of the corporations in this state were created by private and local acts of the Legislature, which constituted their respective charters; and to these acts we looked to find the powers possessed by any particular corporation. The Constitution of 1901 changed this by requiring their creation, and investment with powers, to be done by general laws.

Section 229 of the Constitution provides that the Legislature shall pass no special act conferring corporate powers, but that it shall

pass general laws under which such corporations may be organized and corporate powers obtained, subject, however, to the repeal of the Legislature, and that it shall pass general laws under which charters shall be amended.

The Legislature of 1903 enacted a general statute (Acts 1903, p. 310) which, among other things, provided for the formation of corporations, conferring new powers and amending charters, and for consolidating existing corporations, by general laws. This statute now constitutes the greater part of chapter 69, and of sections 3445–3631, of the Civil Code, relating to private corporations.

The defendant corporation was formed since the Constitution of 1901, and therefore under the general statute now embraced in Code provisions, and was constituted by the consolidation of several other corporations, some, if not all, of which were formed or created by private and local statutes under the old Constitution of 1875. Therefore, to ascertain the powers of this corporation, we must look to both the local and the general laws, and to the specific articles of agreement under and by which the corporation was formed through the consolidation of other corporations, as stated. All of these local acts and these articles of agreement of consolidation and incorporation are set out in the record; and, as we take judicial knowledge of the general laws on the subject, we are thus furnished with the means of ascertaining whether or not this defendant corporation possessed the power to execute the note or the contract in question.

Having so examined the evidence and the law, we feel no hesitancy in holding that the defendant corporation had the power to execute both the note and the contract.

As the defendant is a consolidated corporation formed or created under and by virtue of general statutes, these must be looked to, to ascertain its powers. The general statutes as to consolidating corporations now constitute article 6 of chapter 69 of the Code, embracing sections 3502–3508. Section 3502 authorizes the consolidation of two or more corporations, section 3503 provides the mode and manner of consolidating, and section 3504 prescribes or defines the powers of the new consolidated or merger corporation. The last-mentioned section reads as follows:

"Consolidated or merger corporations shall possess all the rights, powers, and privileges, and be subject to all the restrictions, disabilities, and duties of each of the consolidating corporations, unless additional powers not inconsistent with the provisions of this chapter, are expressed in the said agreement and acts of consolidation, and unless the powers possessed by the several merging corporations are limited or restricted in said agreement."

The new corporation thus formed possesses by virtue of law all of the powers, rights, and privileges of each and all of the old corporations consolidated or merged into the new, and has imposed on it by law all the duties, restrictions, and disabilities of the old, unless the powers possessed by the old are limited or restricted in the agreement of consolidation or merger. In addition to all the powers possessed by each and all of the old corporations, the new corporation may have conferred on it additional powers not inconsistent with any of the provisions contained in chapter 69 of the Code, if such additional powers are expressed in the agreement and acts of consolidation.

[5] An inspection of the agreement and acts of consolidation to form this defendant corporation shows no limitations or restrictions on the powers possessed by the old corporations; hence the new corporation possesses all the powers which each and all of the old corporations possessed, without any restrictions by way of agreement. The articles of agreement to incorporate, and the articles of incorporation, show that many other and additional powers were conferred upon the new corporation, which none of the old ones possessed. Among the additional powers thus conferred, are these:

"To guarantee any dividends or bonds or contracts or other obligations; to make and perform contracts of any kind and description, and in carrying on its business, and for the purpose of attaining or furthering any of its business, to do any and all other acts and things and to exercise any and all other powers which a copartnership or natural person could do and exercise, and which now or hereafter may be authorized by law."

Here is express authority to do the very acts complained of.

[6] Whether it was wise for the Legislature to authorize the consolidation of such corporations, and to authorize the conferring of such powers, by mere articles of agreement to consolidate and incorporate, are questions for the Legislature, and not for the courts.

There is no constitutional inhibition against conferring such powers as those here claimed to be conferred on the defendant corporation. The constitutional provision is that:

"No corporation shall engage in any business other than that expressly authorized in its charter or articles of incorporation." Const. § 233.

The power here exercised is expressly conferred, both by the charter of the original corporation and the articles of consolidation and incorporation.

If the acts of consolidation and incorporation were void on their face, the point might be taken in a collateral proceeding; but, being valid on their face, we will treat them as valid in a collateral proceeding, though they might be avoided in a direct proceeding.

Considerable stress is laid on the fact that powers such as those here exercised cannot be conferred on a railroad corporation by consolidation or otherwise. The trouble with this argument is that all of the consolidating corporations were not railroad or railway corporations, nor is the consolidated corporation exclusively a railroad or railway corporation, though it is authorized to do some things and to exercise some of the authorities pertinent to public railroad corporations. None of the statutory or constitutional provisions can apply so as to declare the attempt to confer this power abortive, in a collateral proceeding like this. The authorities relied upon by appellant do not apply to the case in hand. They are decisions to the effect that as to what a given kind of corporation can do or cannot do, as necessarily incident to things expressly authorized to be done. That is to say, there was no express authority there to do the act complained of, as there is here. The defendant corporation here will not be heard in this collateral proceeding to impeach its own incorporation or consolidation. That will have to be done in some direct proceeding, by the proper parties.

[7] It is next insisted by appellant that its plea of non est factum was established or, to be more accurate, that plaintiffs did not discharge the burden of proof the plea imposed by showing that the note and contract sued upon were in fact and in law executed by the defendant corporation. We cannot agree to this insistence. The proof did show without conflict that the name of the corporation was signed to the note and the contract by its vice president, who was presuming and intending in the matter to act for the corporation; that he was held out by the corporation as having the authority to act for the corporation, and to bind it in such matters, and to so execute notes and contracts for it; that in point of fact he was the alter ego of the corporation in such matters; that similar acts by him, with full knowledge thereof by the officers of the corporation, were ratified. In other words, the evidence shows that he was held out by the corporation as its agent or officer to execute, for it and in its name, contracts like the one here sued on. Hence whether the vice president had the authority to execute the note and contract for the corporation, the corporation had estopped itself from denying the authority of the vice president.

[8] It requires no express written authority to empower a particular officer or agent of a corporation to make, execute, or consummate contracts which the corporation itself is authorized to make. The corporation cannot, by secret and private by-laws or ordinances, limit or restrict the apparent authority of its general agents whom it holds out to the world as having the particular authority or power which they are exercising. Of

course the charter itself could prescribe what officers or agents shall execute certain contracts, and the mode of executing the same. This would be a different case, because it would be allowing the corporation to do things in a mode or manner not authorized, and its officers would not be allowed thus to evade the law. The charter in this case contains no such provisions, nor does it appear that there any ordinances or by-laws of the corporation which would prohibit the vice president from executing the contracts here in question. The evidence in this case certainly made it a question for the jury whether or not the vice president had power and authority to execute the contracts in question for the corporation; it being found that the corporation had the charter power to execute the contract.

[9] In the absence of any charter prohibition a vote of the private corporation to confer authority on an agent to execute a conveyance of personal property may or may not be evidenced by writing, and, when not shown to be so evidenced, may be proven orally. Martin Co. v. Miller, 132 Ala. 634, 32 South. 305.

The charter of a corporation, read in connection with the general law applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against it. But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation was created is not to be taken as prohibited. 107 U. S. 98, 2 Sup. Ct. 221, 27 L. Ed. 413; 10 Cyc. 1097.

There was certainly evidence in this case to show that the vice president, who executed these contracts, was held out by the corporation as a general manager for the corporation, a kind of an alter ego for it.

[10] So far as concerns the execution of the note, and the count declaring on the note, the execution was perfected by a delivery. The notes were payable to the plaintiffs, and on their face were negotiable, commercial paper, and were in the possession of the plaintiffs, as such payees, from date of delivery until the day of the trial. On their face they were not to be held by plaintiffs as in escrow, nor held by them as mere stakeholders, but were to be held by them as payees, with authority to discharge from liability if paid according to their face. Hence, so far as the count on the note is concerned, the execution was perfected by delivery. It is insisted by appellant that, construing the notes in connection with the contract of the same date, the delivery should have been made to the Southern Iron & Steel Company, the corporation from which the consideration moved and to which the payment was ultimately to go. It is true that, read alone, the contract is susceptible of the construction that the two plaintiffs were mere trustees for

the two corporations, the defendant corporation, and the Southern Iron & Steel Company; that is, that they were to hold the notes in escrow until the conditions were performed, and then deliver them to the Southern Iron & Steel Company or its president; that the plaintiffs had no pecuniary interest in the matter, and no duty other than to hold the notes until the conditions were performed, and then deliver them to the real payee. Under this construction the plaintiffs were to be mere stakeholders, as it were, of the notes, with no other powers or duties. The notes themselves, however, do not so provide. The plaintiffs are made the payees, and are therefore charged with the authority and duty to collect, as well as to hold and deliver. Under the notes, they have authority to collect, and to discharge the payer or maker, and have the power to sue thereon. They are therefore not only proper, but necessary, parties to a suit on the notes. It may be that when the funds are collected, they will be for the use and benefit of the Southern Iron & Steel Company; but, so far as pertains to actions on the notes themselves, plaintiffs, from the face of the notes, or even from the notes when construed in connection with the contract, are necessary parties, and delivery of the notes to them by the maker completed the execution thereof. It is very true that there are no bona fide purchasers concerned in this suit, and hence any defense may be had, if the notes were not commercial or negotiable; but in actions on the notes the plaintiffs would be proper parties even if the paper was not commercial. They are the parties authorized to collect the amounts due and to discharge the maker. See sections 2489 and 2490 of the Code, and annotations thereto.

"The person to whom payment may be legally made, and who may discharge the debtor, may sue in his own name, although the money, when collected, is not for his use. Yerby v. Sexton, 48 Ala. 311; Hirschfelder v. Mitchell, 54 Ala. 419; Tilley v. Harrison, 91 Ala. 295, 8 South. 802; Bibb v. Hall, 101 Ala. 79, 14 South. 98; Rice v. Rice, 106 Ala. 636, 17 South. 628." Code 1907, vol. 2, p. 19, note.

Construing the notes in connection with the contract this case falls clearly within the rule announced in the above cases.

[11] Moreover, so far as the action on the note is concerned, there were no special and sworn pleas, denying the ownership of the notes by the plaintiffs or their right to collect the same. Manning v. Maroney, 87 Ala. 563, 6 South. 343, 13 Am. St. Rep. 67; Agee v. Medlock, 25 Ala. 281; Frazer v. Brownrigg, 10 Ala. 817. The sworn plea denying the execution of the note did not raise this question.

[12, 13] The trial court did, however, err in allowing these plaintiffs to recover under count 9, which declared as for a breach of the contract. This count stated no cause of action in favor of these plaintiffs against this defendant or against any one.

These plaintiffs were not parties to that contract. They were neither obligated nor obliged by it. Contracts are reciprocal; there must be two parties to them, and only those interested in the performance of the contract can maintain an action as for a breach of executory contracts. These plaintiffs are interested in the contract only as suitable persons to hold the notes to be executed by the maker, until the other party performs its part of the contract. The maker of the notes did not desire to deliver to the other party its negotiable notes for thousands of dollars, until it was decided that the party to receive them had performed its part of the contract. So these plaintiffs were named in the contract sued on, as disinterested, rather than interested, parties. They were in the nature of stakeholders. If the Southern Iron & Steel Company moved its plant to Gadsden within the time specified, then the notes were to be delivered to it, or were to become binding obligations; if the plant was not so removed, then the notes were not to become binding obligations, but were to be redelivered to the maker or destroyed. These plaintiffs have no pecuniary interest whatever in the performance or the nonperformance of the contract sued on. They were evidently selected and named in the contract as stakeholders of the notes, because they had no pecuniary interest in the performance. In fact, they are prima facie made judges, to determine whether or not the Southern Iron & Steel Company performed the contract as agreed. If it performed, the notes were to be binding on the maker, otherwise not; and plaintiffs were by the contract made the holders of the notes, and prima facie judges to decide whether or not the Southern Iron & Steel Company performed its part of the contract as agreed.

The fact that the notes were made payable to these stakeholders, and that the stakeholders were authorized to collect the money agreed to be paid, did not change the relation of the parties to the contract, as that relation affected a suit for a breach. According to the contention of the plaintiffs, and to some of the evidence, the contract sued upon has been fully performed by both parties to it. That is to say, the Southern Iron & Steel Company removed the plant as agreed, and the defendant corporation executed the notes as agreed by it. Hence, according to the plaintiffs' own contention, there has been no breach of the contract itself; only a failure to pay the notes.

If these notes were accepted as a performance of the contract on the part of the defendant—and the undisputed evidence is that they were so accepted, and in fact the agreement was to the effect that they should be so accepted—they were accepted in discharge of the amount agreed to be paid by the defendant for the removal of the plant. The

contract was not that the notes were to be mere evidence of the amount agreed to be paid, but that they should be accepted in payment thereof.

If these notes were really executed by the defendant, as it agreed to execute them, and they were accepted as a compliance with the agreement, then the contract sued on in count 9 was not breached. The Southern Iron & Steel Company—much less these plaintiffs—could not maintain an action as for breach of the contract, because the contract would not have been breached by the defendant. If these notes, or any part thereof, was not paid, the proper party could maintain an action thereon, as to the amount not paid as agreed, but this action could not be considered as one upon a breach of the contract by which the defendant agreed to give the very notes it did give, and upon which it was sued. The action and the cause of action are different. This seems to us so plain that we deem it unnecessary to argue it further, or to cite authorities to support the correctness of the holding. We will, however, cite a few authorities.

[14] It is indispensable to the validity of a contract that it should be mutually obligatory upon both parties, or it will bind neither. Bank v. Steele, 10 Ala. 925; Wilks v. G. P. R. R., 79 Ala. 180; Evans' Case, 78 Ala. 345; Borst v. Simpson, 90 Ala. 373, 7 South. 814.

All contracts founded upon mutual promises between persons of full age must be obligatory upon both parties, so that each may have an action upon it, or neither will be bound. The whole doctrine rests, though, mainly upon the absence of a consideration to support the promise. Evans Case, supra.

The plaintiffs are conclusively shown, and are admitted, not to have been parties to the contract sued on in count 9, though they were parties to the notes, but to the notes only. They were mentioned in the contract merely as suitable stakeholders of the notes.

[15] Generally, it is true that an entire stranger to the consideration is not regarded as a party to, and cannot maintain an action upon, a simple contract. But if one person makes a promise to another for the benefit of a third, such third person may maintain an action upon the promise, though the consideration does not move from him. Henry v. Murphy, 54 Ala. 246; Carver v. Eads, 65 Ala. 190; Young v. Hawkins, 74 Ala. 370.

These plaintiffs were entire strangers to the consideration of the contract, and the contract was not made for their benefit.

[16] It is a well-recognized principle of law that, to authorize a plaintiff to sue on a legal demand, he must show a legal interest in himself. White v. Joy, 4 Ala. 571. Except as it may be changed by statute, an action on a contract, especially an executory contract; must be brought in the name of him in whom the legal interest in such contract is vested.

1 Chitty, Pl. 3; Gayle v. Martin, 3 Ala. 593, 597.

The plaintiffs here, in count 9, show no legal interest in the contract alleged to have been breached by the defendant. We know of no statute which changes the rule as to them, in an action like the one stated in count 9 of the complaint. Suppose the contract alleged to have been breached was in fact breached by the defendant's failure to execute the notes as agreed—and this is the only probable breach that occurs to us, and the only one attempted to be alleged—what interest in the world would these plaintiffs have in that breach? The very inception of an interest and duty on their part is the execution of the notes, and delivery to them. By the very terms of the contract the notes could have been delivered to any other person than the plaintiffs, if the Southern Iron & Steel Company had so elected.

As the case must be reversed, and the other questions argued may not arise on another trial, or, if they do, will probably arise under different pleadings, we will not here decide them.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.