# FARMERS NATIONAL BANK OF WASECA v. W. S. BROWN.[1]

October 30, 1936.

No. 30,837.

J. W. Schmitt, Charlotte Farrish, and Gallagher, Madden & Gallagher, for appellant.

H. H. Sturner and Junell, Driscoll, Fletcher, Dorsey & Barker, for respondent.

HILTON, JUSTICE.

Suit on two promissory notes wherein there were findings for plaintiff. This is an appeal from an order denying two motions of the defendant: (1) An alternative motion asking that the findings of fact and conclusions of law be amended or that they be vacated in their entirety and the defendant granted a new trial; (2) a motion for certain forms of equitable relief, including the ordering in of additional parties and in effect asking for a declaratory judgment establishing the rights and liabilities of all parties so brought in, the details of which it is here unnecessary to relate.

[1]Reported in 269 N. W. 409.

Defendant was a stockholder in plaintiff bank. Prior to the time the five-party contract hereinafter described was consummated, he borrowed from the bank the money evidenced by the promissory notes here involved. The indebtedness was admitted. The defense was a plea in abatement, *i. e.,* that the plaintiff was not the real party in interest. This defense is claimed to have arisen by reason of a five-party contract entered into by defendant and others, as stockholders in plaintiff bank, and four other parties (First Bank Stock Corporation; plaintiff bank; First Minneapolis Trust Company, as trustee; and R. P. Ward, formerly president of plaintiff bank) by the terms of which the ownership and all the liquid assets, including negotiable bonds, of plaintiff bank were transferred to the First Bank Stock Corporation. In exchange, each of the stockholders of plaintiff bank received a proportionate number of shares of the stock of the First Bank Stock Corporation. The stock so received was placed in the hands of the trustee to secure the new owner of plaintiff bank (First Bank Stock Corporation) against any losses that it might suffer during the succeeding three-year period because of any of the assets taken over by it becoming uncollectible or unsalable at their book value. Ward, as majority stockholder in plaintiff bank, turned over to the trustee $100,000 worth of his own securities for the same purpose. The contract provided that when a loss occurred the First Bank Stock Corporation might certify the depreciated asset to the trustee as uncollectible and then the latter was to redeem it at the 1931 listed value thereof out of the stock and securities pledged with it. The old stockholders of plaintiff bank were privileged to redeem the assets so certified back if they wished. Through this arrangement the notes here in question came into the hands of the trustee.

Subsequently the trustee transferred these notes back to the plaintiff for the purpose of collection. Plaintiff, payee thereof, removed all intervening indorsements as not necessary to its title. Under the negotiable instruments act, § 48, 2 Mason Minn. St. 1927, § 7091, it had a right so to do, thus making this, in effect, a suit by the payee against the maker. Defendant contends that the notes are restricted by the terms of the five-party contract and that

under it the bank had no right to the proceeds of the notes, for the three-year period limited by the contract had expired. The argument is that the proceeds belong to the old stockholders as beneficiaries of the trust. That may or may not be true as to the ultimate distribution of those proceeds, but is immaterial here, for this merely is a suit on promissory notes in which plaintiff acted as agent of the trustee.

Defendant further contends that at the end of the three-year period the trustee's power to deal with the notes, which were part of the trust *res,* expired. It is agreed that the trustee held legal title to them at least until the expiration of the three-year period. The happening of that event did not *ipso facto* terminate the trust so as to deprive the trustee of that title. The contract provided that after the "payment of all losses and deficiencies," plus a reasonable compensation to the trustee for its services, the latter should make distribution. Such payments have not been made nor has there been a final accounting. Until then, at least, the title to the trust *res,* included in which were the notes, remained in the trustee. Schaal v. Schaal, 203 Iowa, 667, 213 N. W. 207; Allen v. Merrill, 223 Mich. 467, 194 N. W. 131; 33 Yale L. Jour. 331; *cf.* Huntsman v. Fish, 36 Minn. 148, 30 N. W. 455; Galloway v. Security State Bank, 193 Minn. 104, 258 N. W. 10. As holder of the legal title the trustee was not only entitled as a matter of law to collect all debts due the trust *res,* see Moulton v. Haskell, 50 Minn. 367, 52 N. W. 960, but by the express terms of the contract was to "collect and realize thereon with full power to sell, compromise, renew, extend or otherwise deal in and with the same." Also it was authorized to redeliver any "asset or assets to the Bank [plaintiff here] for collection or sale." The notes merely were part of those assets so redelivered for collection.

Even so, defendant argues that as 2 Mason Minn. St. 1927, § 9165, requires that every action be prosecuted in the name of the real party in interest there is a defect of parties for the reason that plaintiff held the notes only as indorsee "for collection." Though the nature of the indorsement may be beyond our inquiry in a situation such as we have here, see Citizens State Bank v. E. A. Tess-

man & Co. 121 Minn. 34, 140 N. W. 178, 45 L.R.A.(N.S.) 606, defendant cannot prevail even if it be assumed that the indorsement is as he contends. By 2 Mason Minn. St. 1927, § 7094, negotiable instruments act, § 51, the holder of a negotiable instrument "may sue thereon in his own name and payment to him in due course discharges the instrument." A payee in possession, as is plaintiff, is a "holder" within the meaning of the statute. 2 Mason Minn. St. 1927, § 7235, negotiable instruments act, § 191.

Further, in the negotiable instruments act, § 37, 2 Mason Minn. St. 1927, § 7080, it is provided: "A restrictive indorsement confers upon the indorsee the right: * * * (2) To bring any action thereon that the indorser could bring." Under that section it is uniformly held that an indorsee "for collection" may bring suit in his own name. Brannan, Negotiable Instruments Law (5 ed.) p. 481; Trude v. Fulton, 207 Ill. App. 216; see Alabama City G. & A. Ry. Co. v. Kyle, 202 Ala. 552, 81 So. 54. Prior to the enactment of the negotiable instruments act the rule was otherwise in this state. See Rock County Nat. Bank v. Hollister, 21 Minn. 385. Such an indorsement is held to pass legal title to the indorsee qualified to the extent of carrying on its face notice of the fact that the instrument is held in trust for the indorser. Moore v. Hall, 48 Mich. 143, 11 N. W. 844; 22 Harv. L. Rev. 150; Hook v. Pratt, 78 N. Y. 371, 34 Am. R. 539; Brannan, Negotiable Instruments Law (5 ed.) p. 439. Plaintiff then being holder of the legal title certainly was the real party in interest.

Defendant could have urged any defense in this action that he could have urged against the trustee. Smith v. Bayer, 46 Or. 143, 79 P. 497, 114 A. S. R. 858. Satisfaction of the judgment will preclude any further successful action against him on the notes for the obligation evidenced by them will be discharged. Certainly, as far as defendant is concerned, the action has been prosecuted by the real party in interest in every respect. See McGuigan v. Allen, 165 Minn. 390, 206 N. W. 714. If defendant desires to have determined the rights and liabilities of all the parties to the five-party contract, the result of this suit will not be a bar to his so doing in an appropriate action.

Affirmed.